JONES, Justice.
The primary issue in this Federal Employers Liability Act case relates to the jury’s determination of future lost earnings where the employee alleges permanent job-related injuries:[1] Whether the trial court erred in admitting opinion evidence concerning present value of future wages where the data base for the opinion (interest rates and inflation rates) was not within the personal knowledge of the expert witness. Because we hold that the challenged testimony was based on hearsay evidence, we reverse the judgment and remand the cause for a new trial.[2]
To understand our holding, it is important to appreciate the nature and purpose of the testimony in issue. The expert testimony offered by the plaintiff was to the effect that, in commuting a lump sum loss of future earnings to its present value (the authorized award of damages), it is essential to build into the formula two separate calculations — a discount or interest rate factor and an inflation rate factor. Before the interest rate is allowed, it must be offset by the inflation rate. The object here, of course, is premised on the proposition that the injured employee is entitled to be compensated with, and the employer is obligated to pay, that present sum that could reasonably be expected, over the ex-ployee’s work life expectancy, to yield the lost future earnings. Thus, the annual rate of yield, less the annual rate of inflation, when mathematically applied, will reduce the aggregate lump sum loss to its present value.
For a somewhat oversimplified example, if we assume that over the past 10 to 20 years, the interest and inflation rates were the same, the lump sum loss would not be subject to any reduction in arriving at the appropriate award. Both parties however, premise their arguments on the fact that, over the past 20 years, the interest rate, generally speaking, has exceeded the inflation rate. In the final analysis, then, it is *756 this differential in the two rates that is critical to the “present value" calculations.
The plaintiffs expert witness, an economist, in arriving at his “present cash value” opinion, used in his calculations the following factors: 1) plaintiffs work life expectancy; 2) the amount of money the plaintiff is currently losing less tax consequences; 3) interest earned on principal less tax consequences; 4) wage growth rate; 5) discount rate; 6) inflation rate; and 7) business expenses that will no longer be incurred. Applying these factors, he testified that the present cash value of the plaintiffs after-tax, after-expense income loss would be $360,507. See Culver v. Slater Boat Co., 722 F.2d 114 (5th Cir. 1983), cert. denied, 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984). Because of its special significance to the issue here presented, we note that the plaintiffs expert witness used a 2% differential between the interest rate and the inflation rate in making his final “present cash value” calculation.
The defendant’s expert, also an economist, challenged the basis for the plaintiffs expert testimony — specifically the 2% interest/inflation rate differential. Using what he proposed as a “more reliable” data base, the defense witness factored into his calculations the “official” U.S. Government Reports from 1980 to 1986. We quote directly from the record of trial:
“[Defendant’s counsel]: Did you research that and obtain that from the library?”
“[Witness]: Yes, I called the [Government Records Department of the] Birmingham Public Library and they got the information on inflation rates from ... the Bureau of Labor Statistics. Three-year T bond rate comes from the Federal Reserve Board [manuals in the Government Records Department of the Birmingham Public Library].”
On voir dire, plaintiff’s counsel questioned the defendant's witness:
“[Plaintiff’s counsel]: You’ve never seen the government sources yourself?
“Witness: I had seen part of this before.
“[Plaintiff’s counsel]: But not all of it?
“Witness: Not all of it.
[[Image here]]
“[Plaintiff’s counsel]: Your Honor, I object to this [evidence] on the basis that it’s based on hearsay. He picked up the phone apparently and called the public library and asked somebody, we don’t know who, to look something up for him. And we don’t know if that person looked it up correctly or not. That person is not subject to cross-examination. We don’t even know if the person who looked it up was qualified or if it was — it’s hearsay. It’s inadequate. We object on that basis.
[[Image here]]
“THE COURT: Show me the figure in question about when you called the library.
“THE WITNESS: Okay, I had to get — I had only got part-way through ’84 so it would be ’84, ’85, and ’86 for this [indicating figures on a chart prepared by witness].
“THE COURT: I still can’t tell from that explanation what came from the library.
[[Image here]]
“THE WITNESS: This rate for inflation for ’84, this rate for inflation for ’85 and this rate for ’86. And then also for the T bonds, this rate of interest for T bonds for ’84, this rate for ’85, and this rate for ’86 [again, referring to the prepayment chart].
“THE COURT: And that’s what you got from the library.
“THE WITNESS: Yes, sir.
[[Image here]]
“[Plaintiff’s counsel]: Judge, I still object. [Addressing the witness:] I mean *757 isn’t it true really that these numbers that you have here, the only way you have those numbers down to those decimal points is because you called and asked? I mean you based that on what someone on the phone told you, didn’t you?
“THE WITNESS: Part of them, yes. Part of them I had the figures for.”
That the statements relating to the 1984, 1985, and 1986 inflation and interest rates made to the witness by someone at the Birmingham Public Library over the telephone are out-of-court statements, which were offered to prove the truth of the matters asserted, is not seriously questioned. Likewise, it cannot be seriously questioned that such statements fall within the definition of “hearsay”:
“[H]earsay includes every human statement, not made in the process of testifying as a witness in the present trial or contained in a deposition taken for use in the present trial, offered as tending to prove the truth of the matter stated.”
C. Gamble, McElroy’s Alabama Evidence, § 242.01(1) (3d ed. 1977). See Lucky Manufacturing Co. v. Activation, Inc., 406 So. 2d 900, 904 (Ala.1981). See, also, Cleary, McCormick on Evidence, 584 (1972); 5 Wigmore, Evidence, § 1362 (Chadbourne rev. 1974).
It is clear that the witness’s use of “hearsay” data—the interest and inflation rates for the years 1984, 1985, and 1986— produced a markedly increased overage differential (5.67%), as compared with the differential used by the plaintiff (2%), thus producing a much lower “present value.” Moreover, the defendant, through the testimony of its expert witness, sought to discredit the plaintiff’s lower discount rate and higher inflation rate (producing a higher “present value” and thus justifying a higher jury award) on the basis of U.S. Government figures. To factor into the formula this higher average differential for 3 of the 7 years used in the witness’s calculations, a differential obtained from an out-of-court source not falling within any of the “hearsay” exceptions, rendered inadmissible this entire testimony, including the exhibits depicting the results of his calculations. See Sovereign Camp of Woodmen of the World v. Marshall, 17 Ala.App. 32, 81 So. 246 (1919); and Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545 (1948).
The defendant’s efforts to support the trial court’s rulings are not persuasive. First, the defendant, citing R.L. Reid, Inc. v. Plant, 350 So.2d 1022 (Ala.1977), contends that its witness was “an expert who [could] and did testify that in his opinion the interest and inflation rates which he used [were] substantially correct.” But this (to use data within his personal expert knowledge) is precisely what the witness did not do. Clearly, the witness’s purpose was to use data from an “official” source— the U.S. Government—to discredit and impeach the opinion evidence of the plaintiff’s expert. We quote from R.L. Reid, Inc. v. Plant, 350 So.2d at 1025:
“Experts may be permitted to state facts known to them because of their expert knowledge but should not be allowed to substitute opinion for fact, although they can express an opinion on established or assumed facts.” (Emphasis added.)
The 1984, 1985, and 1986 interest and inflation rates, included in the challenged evidence, were not “facts known” to the defendant’s expert witness. Again, we emphasize that the central thrust of the defendant’s expert testimony was to contrast the defendant’s data base source with that of the plaintiff—a source that it claims was less credible than that used by the defendant.
Next, the defendant, in an attempt to avoid the hearsay issue, contends that the plaintiff had ample opportunity to rebut the defendant’s expert testimony and did not elect to do so. We know of no rule that renders inadmissible hearsay evidence admissible, or otherwise renders the admission of such evidence harmless, by the fact that the opposing party failed to exercise the opportunity of rebuttal.
REVERSED AND REMANDED.
*758 MADDOX, SHORES and ADAMS, JJ., concur.
HOUSTON, J., concurs in the result.

. The plaintiff obtained a $30,000 verdict, filed a post-judgment motion for a new trial, claiming error in the trial court’s overruling of his objection to expert testimony relating to the reduction of future lost earnings to present value, and appealed from the adverse ruling on that motion.

. Plaintiff also assigns as error the overruling of his objection to a jury instruction relating to the tax consequences of any award of damages. claiming that the charge was incomplete and thus misleading. Because of the complex nature of the orally requested additional instruction, and because the plaintiff failed to request the additional explanatory charge in writing, we find no issue preserved for our review, pursuant to Rule 51, A.R.Civ.P. See Ex parte Jordan, [Ms. 86-1052, May 27, 1988] (AIa.1988).