This is an appeal from an action for damages based on personal injuries incurred by plaintiff/appellant James Harvey Tipler when his vehicle collided with a tractor/trailer rig operated by defendant/appellee John Authement. At the time of the collision, which occurred at the "T" intersection of U.S. Highway 31 and County Road 2 in Escambia County, Tipler was traveling north on Highway 31 and Authement was traveling south and was in the process of making a wide, swinging turn to the right onto County Road 2.
Tipler originally named as defendants Authement, McKenzie Tank Lines ("McKenzie"), Cantonment Trucking Company ("Cantonment"), Charles E. Arnold, and Exxon Corporation ("Exxon"), and claimed that his injuries were caused by Authement's negligence and wantonness and that the remaining defendants were vicariously liable. (The principal/agent relationship between Authement and McKenzie and Cantonment was not seriously disputed at trial.) Tipler's amended complaint added a claim for damages against Exxon for the creation and maintenance of a public nuisance; and the claim against Exxon based on its agency relationship with Authement was subsequently abandoned. Thereafter, the trial court granted Exxon's motion for summary judgment on all claims against it. (That judgment was not made final pursuant to Rule 54(b), A.R.Civ.P.)
The case proceeded to trial against defendants Authement, McKenzie, and Cantonment. Arnold had been voluntarily dismissed. Following trial, the jury returned a verdict in favor of the named defendants. Tipler appeals from the summary judgment in favor of Exxon and the denial of his motion for a new trial as to Authement, McKenzie, and Cantonment.
Three issues are presented: Whether the trial court 1) erred in granting Exxon's motion for summary judgment on Tipler's nuisance claim; 2) erred in overruling Tipler's objection to the admission of expert testimony by the investigating state trooper regarding the maximum safe speed at which northbound traffic should have been traveling on the occasion of the accident under the prevailing conditions; and/or 3) erred in denying Tipler's motion for a new trial on the "weight and preponderance of the evidence" ground.
We hold that the trial court did not err in rejecting Tipler's claim for damages based on Exxon's alleged creation and maintenance of a nuisance; but that the trial court did err in admitting the challenged expert evidence. Because we reverse and remand on the "admissibility of *Page 440 
the evidence" issue, we need not address the "weight and preponderance of the evidence" ground for a new trial.
Additional facts pertinent to the dispositive issues are as follows: At the time of the accident, Authement's destination was Exxon's Big Escambia Creek facility, which is located on County Road 2 three miles west of the accident scene. Because a bridge is located immediately adjacent to the point at which County Road 2 conjoins U.S. Highway 31, trucks headed south on U.S. Highway 31, such as Authement's, that turn onto County Road 2 must first swing left into the northbound, or oncoming, lane of Highway 31 traffic to clear the concrete sides of the bridge. To complete that right turn, it is necessary for the truck operator to actually drive the tractor completely into the oncoming lane of traffic, and to travel in that lane for about 60 feet (the approximate length of the rig). Approximately 300 feet south of that intersection on Highway 31 is the top of a hill, which must be crested by the drivers of northbound vehicles before they can see southbound trucks turning from U.S. Highway 31 onto County Road 2. This entire stretch of Highway 31 is marked with double yellow center lines.
McKenzie's trucks went to Exxon's facility on a daily basis for the purpose of loading McKenzie's trailers with liquid sulphur, a product of Exxon's Big Escambia Creek facility. For more than one year before this accident, Authement and seven other McKenzie drivers had been making trips to Exxon's facility on a three-times-per-day basis. Further, two other carriers hauled away sulphur from Exxon's facility on a daily basis, resulting in a total of about 40 times a day that a truck had to travel 60 feet completely into the wrong lane of traffic on U.S. Highway 31.
It is undisputed that Exxon had no agency relationship with either of the other defendants; that Exxon had no right of control, and exercised no control, over the hauling activities from its facility; and that Exxon did not engage in any activity relating to the construction or maintenance of the public roads here involved or relating to traffic control upon those roads.
 THE NUISANCE CLAIM
Tipler presents an interesting and persuasive argument in support of his allegation that the trial court erred in rejecting his nuisance claim as a matter of law. We agree that Ala. Code 1975, § 6-5-120, has been liberally interpreted to effect its broadly stated purpose (providing a remedy for "anything that works hurt, inconvenience or damage to another"). See McCraney v. City of Leeds, 239 Ala. 143,194 So. 151 (1940); and Baldwin v. McClendon, 292 Ala. 43,288 So.2d 761 (1974). We also agree that "anything" (i.e., a nuisance, public or private) may consist of conduct that is intentional, unintentional, or negligent. Indeed, it may even consist of activities that are conducted in an otherwise lawful and careful manner, as well as conduct that combines with the culpable act of another, so long as it works hurt, inconvenience, or damage to the complaining party. Restatement(Second) of Torts § 821B (1979). See, also, Alabama Power Co.v. Stringfellow, 228 Ala. 422, 153 So. 629 (1934).
This does not mean, however, that the plaintiff is not required to prove against the defendant the elements of legal duty and causal relation between the conduct or activity complained of and the hurt, inconvenience, or damage sued for. That which works hurt to another, to satisfy the statutory definition of a nuisance, must comport with the classical tort concepts of duty and causation. See Lauderdale County Board ofEducation v. Alexander, 269 Ala. 79, 110 So.2d 911 (1959) (holding that the statutory definition of nuisance is declaratory of the common law and does not supersede the common law as to the other conditions and circumstances constituting a nuisance under the common law). Thus, we must look to the particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, or has permitted to exist a set of circumstances, that, in its natural and foreseeable consequences, proximately caused *Page 441 
the hurt, inconvenience, or damage complained about.
Moreover, even assuming that the determination of causation is properly a factual issue for the jury, there yet remains the threshold issue of legal duty. As to both elements — duty and causation — the facts here presented fall short of bringing Exxon's activities within the ambit of an actionable tort for creating and maintaining a nuisance.
The problem is one of remoteness. While Tipler's argument — that "Exxon's operation caused both lanes of traffic on U.S. Highway 31 to be blocked, thereby creating 'a very dangerous condition' " — has a certain logical "but for" appeal, the facts do not supply the requisite nexus between Exxon's activities and the ultimate events and circumstances of the accident in question. Exxon cannot be charged and held liable either for maintaining, or for failing to prevent, a chain of events and circumstances over which it had no reasonable means of control. To hold otherwise would require that Exxon either assume the responsibility of reconstructing the public highways (or otherwise removing the traffic hazard), or close its industrial sulphur operation at the Big Escambia Creek facility. The law will not impose that choice under these circumstances.
 THE EVIDENTIARY ISSUE
To fully understand the context in which this issue arises, we quote directly from the trial transcript:
 "Q. [Defense counsel's direct examination of the investigating state trooper] Trooper, do you recall the weather conditions that day or the road conditions or either or both?
"A. Yes, sir.
"Q. And what were they, please sir?
 "A. It was overcast. It had rained what I would call a summertime shower. On the way out there it was still misting some but at the time that I arrived there was no need for any rain gear.
 "Q. Do you know what the posted speed limit is in the area northbound on Highway 31 in the vicinity where this accident occurred?
"A. Yes, sir.
"Q. What is that or what was it on July 7, 1985?
"A. Fifty-five.
 "Q. Under the existing road conditions, do you have a judgment as to whether or not 55 would be exceeding safe speed?
"MR. TIPLER: We object, sir.
 "MR. POWELL: The rules of the road address that, Your Honor.
 "MR. TIPLER: I know it does but it doesn't give him a right to express it. It may give the jury a right to determine, but not him. It's not up to him to determine what is safe.
"MR. POWELL: Well, he's qualified as an expert.
 "MR. TIPLER: No, sir, he is not. "MR. POWELL: Yes, sir, he is an —
 "THE COURT: I overrule the objection on that question.
"MR. TIPLER: We except.
"MR. POWELL: — in accident investigation.
"Q. (MR. POWELL): Sir?
"A. Forty to 45 at maximum.
 "Q. Why would you say that? What were the prevailing conditions that northbound traffic coming over that hill would have had knowledge [of] or should have had knowledge [of] that would have made a difference in the posted limit?
 "A. They had — first off, anybody traveling would have had knowledge —
 "MR. TIPLER: We object to that kind of an answer. Judge, he's giving opinions up here about things that he has no right to.
 "MR. POWELL: Well, maybe the jury would like to know what he bases his opinion on.
"MR. TIPLER: Maybe they would but —
 "MR. POWELL: I would think that you would want —
"THE COURT: You all don't argue with each other.
"MR. POWELL: All right, sir. *Page 442 
 "MR. TIPLER: No, sir. I think I want to follow the law and the law says he's not entitled to do that no matter how —
 "THE COURT: You all don't argue with each other. You address your objection to the bench.
 "MR. TIPLER: I'm saying that I object to it because it's the law that he's not entitled to do it.
"THE COURT: All right. Repeat your question.
 "MR. POWELL: My question was: What were the prevailing conditions that he bases his opinion that 40 or 45 miles per hour —
"THE COURT: You object to that question?
"MR. TIPLER: Yes, sir.
 "THE COURT: I overrule the objection. You may answer the question.
 "A. The prevailing conditions were the wet road, the coming off the level road into the dip or hill crest as is shown there with the intersection. Excuse me. The hill crest is not shown as much on the sign. The intersection and the fact that the road is a passing zone which indicates something. And the sign there indicating that trucks would be on the roadway."
Ordinarily, as defense counsel points out, a properly qualified expert, like the state trooper in this case, may give opinion evidence with respect to the safe speed at which a vehicle may travel under the prevailing conditions. SeeWhite v. Zutell, 263 F.2d 613 (2d Cir. 1959), citing NorthernAlabama R.R. v. Shea, 142 Ala. 119, 37 So. 796 (1904). The admissibility of such evidence, however, must be predicated on the driver's ability to observe and appreciate those very conditions on which the expert opinion is based. Therein, as the objection to the question points out, lies the problem. Indeed, the trooper's answers to the challenged questions dramatize the basis for the objection. In material part, the trooper's reply to the second question (the prevailing conditions on which his opinion of a safe speed was based) contains conditions and circumstances surrounding the scene of the accident, which was outside the plaintiff's range of vision or knowledge until after he had crested the hill within 300 feet of the point of impact.
In effect, the trooper stated that, taking into account all prevailing conditions, including the dangerous intersection and its proximity to the crest of the hill, the maximum safe speed would not have been over 40 to 45 miles per hour. To be sure, the trooper's after-the-fact analysis and opinion are obviously correct; but they necessarily take into account the very danger that was hidden from the plaintiff's view as he approached the unknown and illegally-blocked intersection. The plaintiff's opportunity on cross-examination to obtain from the witness a different opinion, based upon only those conditions known to plaintiff before cresting the hill, does not suffice to cure the initial prejudicial error in admitting such expert evidence under these circumstances.
Moreover, we observe that the trooper was allowed to state his conclusions before he was asked to detail the facts upon which he based his opinion. While his failure to so state the facts may be rendered harmless if the facts are then elicited by later examination of the witness, the harmless error rule is not invoked where, as here, it is apparent that the subsequently stated facts were not restricted to those circumstances available to the plaintiff. By the trial court's admission of such evidence, the jury was permitted to test the plaintiff's behavior against conditions and circumstances of which he was unaware. Under the totality of these circumstances, we hold that the "merit or quality of the questioned conduct" of the plaintiff in approaching the dangerous intersection was peculiarly "within the ordinary cognizance of the jury" (C. Gamble, McElroy's Alabama Evidence
§ 128.06 (1977)); thus, the factual issue of the maximum safe speed under these circumstances was not the proper subject of opinion evidence.
AFFIRMED AS TO EXXON; REVERSED AS TO AUTHEMENT, McKENZIE, AND CANTONMENT; AND REMANDED. *Page 443 
ADAMS, STEAGALL, and KENNEDY, JJ., concur.
ALMON, J., concurs in the result.
MADDOX, J., concurs in part, and dissents in part.