**PARK CENTER INCORPORATED, Thomas M. Marr, Maury Friedlander, and Park Center Inc., Plaintiffs,**

**v.**

**CHAMPION INTERNATIONAL CORP., Defendant.**

**Civ. A. No. 90–0742–AH–S.**

United States District Court, S.D. Alabama, S.D.

Sept. 28, 1992.

Peter F. Burns, Burns, Cunningham & Mackey, Mobile, Ala., for plaintiffs.

G. Sage Lyons, Reggie Copeland, Jr., and Michael Niemeyer, Lyons, Pipes & Cook, Mobile, Ala., for defendant.

## ORDER

HOWARD, Chief Judge.

This cause is before the Court on Defendant's motion for summary judgment as to all counts except those predicated upon nuisance, which counts are before the Court on Defendant's motion for judgment on the

pleadings.[1] [Docs. 91–92]. This case involves claims against Champion International Corporation ("Champion") relating to lupuna wood paneling installed in 1983 in a building at 4617 Springhill Avenue Extension, Mobile ("the building") originally owned by Plaintiff Park Center Incorporated. Plaintiffs Thomas Marr and Maury Friedlander owned the building from January 1, 1987 to June 2, 1988. Thereafter, Plaintiff Park Center Inc. owned the building. Champion contends that all of Plaintiffs' claims are barred by the applicable statute of limitations. Alternatively, Champion submits that Plaintiff Park Center Incorporated, and Plaintiffs Marr and Friedlander as former shareholders, and as guarantors thereof, lack capacity to sue. As to plaintiffs Park Center Inc., and Marr and Friedlander, Champion seeks summary judgment on claims of negligence, wantonness, recklessness, fraudulent suppression of a material fact, and intentional misrepresentation. Finally, Champion argues that it is entitled to judgment as a matter of law on all nuisance claims. For the reasons that follow, Defendant's motion is GRANTED IN PART and DENIED IN PART.

### FINDINGS OF FACT

1. Park Center Incorporated was formed on July 31, 1968 by Plaintiff Maury Friedlander and two other persons. In 1969 Plaintiff Thomas Marr became a stockholder thereof.

2. In 1969, Park Center Incorporated built an edifice at 4617 Springhill Avenue Extension which is the building at issue in this action.

3. On February 28, 1983 the State of Alabama Department of Industrial Relations entered into a seven year lease of the building with Park Center Incorporated. The lease began on July 1, 1983.

4. After the lease was signed, but before the State moved into the building, Plaintiff Park Center Incorporated hired Langan construction ("Langan") to renovate the building. Marr and Friedlander personally guaranteed the mortgage undertaken to finance the renovation.

5. The employees of the State of Alabama expressed a preference for paneled walls as part of the renovation, and Langan asked the Government Street Lumber Company to purchase paneling on his behalf.

6. Langan asked Bill Parker, the State's office manager, to select the paneling that he preferred at a warehouse containing Defendant's products.

7. Parker selected paneling that Defendant marketed as "Hillside Birch" and "Hillside Oak".

8. In May, 1983 Langan installed 950 sheets of paneling, consisting of half of each type of paneling.

9. The core of each panel consisted of lupuna wood, and was installed on every interior room in the building excepting the restrooms and the break room. This constituted approximately ninety-five percent of the interior of the building. Defendant did not inform Parker, Langan or any plaintiff at the time of purchase that the paneling contained lupuna wood.

10. Lupuna is a Peruvian tree with a high starch content that renders it subject to bacterial attack in hot, humid weather, which bacterial attack causes an unpleasant odor to issue from the wood.

11. The lupuna core of each panel is sandwiched between two thin pieces of veneer.

12. Champion knew as early as 1967 that lupuna wood was volatile and capable of emitting strong odors in hot, humid weather.

13. Immediately after July 1, 1983 the State's employees began to notice an unpleasant odor in the building. In 1984, employees suspected that paneling in two conference rooms was the source of the strong odors. Thereafter, Champion removed the paneling in those rooms at its own expense, but the complaints of odors continued intermittently until 1988.

---

**1.** Should the Court deny the motion for judgment on the pleadings, Defendant requests that the Court treat this alternatively as a motion for summary judgment on the nuisance counts.

14. On December 31, 1986 Park Center Incorporated was dissolved. Thereafter, Marr and Friedlander, and Frank Caron, a former shareholder of Park Center Incorporated not involved in this action, owned the building individually.

15. Plaintiff Park Center Inc. filed articles of incorporation on June 3, 1988, with Plaintiffs Marr and Friedlander as sole stockholders. Park Center Inc. assumed ownership of the building at that time.

16. On March 31, 1988 the State Director of Industrial Relations wrote Plaintiffs and informed them that the State's employees were suffering dizziness and other health problems due to conditions at the building, and that therefore, the critical and emergency situation would require the State to vacate the building if the problems did not abate.

17. Champion hired Hal Ettore to inspect the building, and on October 3, 1988 informed Plaintiffs that the paneling was causing the odors, and that the paneling contained lupuna wood.

18. In November, 1988 Champion removed the paneling and replaced it with sheetrock, all at its own expense.

19. The State of Alabama declined to renew its lease after it expired in June, 1990. The building has remained vacant ever since.

20. Plaintiffs commenced this action on September 26, 1990, alleging claims under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") (count one), and of fraudulent suppression of material facts (count two), willful misrepresentation (count three), negligence (count four), recklessness (count five), wantonness (count six), trespass (count seven), wanton trespass (count eight), reckless trespass (count nine), intentional trespass (count ten), nuisance (count eleven), reckless creation of a nuisance (count twelve), and wanton creation of a nuisance (count thirteen). On February 13, 1991, the Court denied Defendant's motion to dismiss count two (suppression of material facts), holding that Plaintiffs had sufficiently alleged "particular circumstances" imposing a duty on Defendant to disclose that the paneling con-

tained lupuna wood. In an Order dated May 12, 1992, this Court dismissed the AEMLD claim (count one) and all trespass claims (counts seven through ten).

## CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Technologies, Inc.*, 882 F.2d 993, 996 (5th Cir.1989) (*citing Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510).

The basic issue before the Court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson, supra*, 477 U.S. at 251–252, 106 S.Ct. at 2511–12. "[T]he moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodge[s] must be viewed in the light most favorable to the opposing party." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Where the nonmoving party, as here, bears the burden of proof at trial, the burden on the moving party may be discharged by 'showing'—that is, by pointing out to the District Court—that there is an absence of evidence

to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita, supra,* 475 U.S. at 586–87, 106 S.Ct. at 1356 (*quoting* Fed.R.Civ.P. 56(e)) (emphasis removed) (internal quotation marks omitted); *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).[2] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted); *cf. Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case. *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 636 (11th Cir.1991).

*I. Statute of Limitations*

■ Defendant alleges that all of Plaintiffs' causes of action are barred by the Alabama Statute of Limitations, namely title 6, section 2–38 of the Alabama Code, which enumerates a series of causes of action to which it applies, not including fraud, negligence, wantonness, recklessness, and nuisance. As to those causes of action, the statute provides as follows:

**Commencement of Actions—Two Years**

... (*l*) All actions for injury to the person or rights of another not arising from contract and not specifically enumerated

in this section must be brought within two years.

ALA.CODE § 6–2–38(*l*) (1985).

The limitations period begins to run after the cause of action accrues, ALA.CODE § 6–2–30 (1985), which is on the date the party in whose favor the cause of action arises is entitled to maintain an action thereon. *Garrett v. Raytheon Co.,* 368 So.2d 516, 518–19 (Ala.1979). Expressed differently, "the statute of limitations begins to run when the first injury, however slight, occurs, even though that injury may later become different or greater". *Free v. Granger,* 887 F.2d 1552, 1555–56 (11th Cir. 1989) (applying Alabama statute of limitations).

However, the limitations period may be tolled by title 6, section 2–3 of the Alabama Code, which states in relation to accrual of claims for fraud that:

In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting fraud, after which he must have two years to prosecute his action.

ALA.CODE § 6–2–3 (1985).

Despite the clear language of section 2–3, the Alabama Supreme Court has held that it applies not only to fraud claims, but also to "other torts not arising in fraud in appropriate cases, and [also] to a fraudulent concealment of the existence of a cause of action." *Holdbrooks v. Central Bank of Alabama, N.A.,* 435 So.2d 1250, 1251–52 (Ala.1983) (*quoting Tonsmeire v. Tonsmeire,* 285 Ala. 454, 457, 233 So.2d 465 (1970)); *Sellers v. A.H. Robins Co.,* 715 F.2d 1559, 1560–61 (11th Cir.1983). "In Alabama, the expiration of a limitation period is tolled only until a plaintiff discovers, or should have discovered through the exercise of due diligence, his cause of action." *Sellers, supra,* 715 F.2d at 1561. However, section 2–3 does not "apply to an action until the expiration of time allowed by the applicable statute of limitations would ap-

**2.** The shifting burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the

burden of proof at trial. *Clark, supra,* 929 F.2d at 607.

pear to have created a bar to the suit." *Williams v. Mertz,* 549 So.2d 87, 88 (Ala. 1989).

On summary judgment, a plaintiff seeking to invoke section 2–3 bears the burden of establishing prima facie facts that "show that the defendant wrongfully prevented discovery of the wrongful act on which the action is based".[3] *Sellers, supra,* 715 F.2d at 1561 (citations omitted). A long line of Alabama cases has held that the question of when a party discovers or should have discovered fraud so as to toll the statute of limitations is the province of the jury, and may be taken away from the jury "and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud". *Hicks v. Globe Life & Accident Ins. Co.,* 584 So.2d 458, 463 (Ala.1991) (italics in original); *see* Roberts & Cusimano, *Alabama Tort Law Handbook,* § 20.20 at 398 (1990).

Here, Plaintiffs first began to suffer injury from the paneling which, unbeknownst to Plaintiffs, contained volatile lupuna wood, in February, 1984. Not having filed this action within two years of that date, Plaintiffs' claims are thus time-barred unless section 2–3 tolls the statute of limitations. Plaintiffs first learned that the paneling at 4617 Springhill Avenue Extension contained lupuna wood on October 3, 1988. Plaintiffs filed their complaint in this action on September 26, 1990. There is nothing to indicate that Plaintiffs actually knew or should have known of the existence of lupuna wood in the paneling before October 3, 1988.

In the context of this motion, Plaintiffs must actually have known prior to Septem-ber 26, 1988, of facts that would have indicated to a reasonable person that Defendant was concealing the existence of lupuna wood in the paneling at issue. Defendants have failed to make such a showing on this record. Therefore, whether Plaintiffs' claims are barred by the statute of limitations is a question for the jury. Accordingly, Defendant's motion for summary judgment as to the statute of limitations is hereby DENIED.[4]

## *II. Corporate Capacity to Sue*

Defendant next argues that Park Center Incorporated, as a dissolved corporation, is barred from bringing this action because it lacks capacity to sue. Park Center Incorporated's right to sue following dissolution is controlled by the Alabama corporate survival statute, namely title 10, section 2A–203 of the Alabama Code, which provides that:

> The dissolution of a corporation ... shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred prior to such dissolution if action or other proceeding thereon is commenced *within two years after the date of such dissolution.* Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors, and officers shall have the power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim.

ALA.CODE § 10–2A–203 (1975) (emphasis supplied).

---

3. Contrary to Defendant's interpretation of *Sellers, supra,* this does not mean that a plaintiff must "prove the existence of fraudulent concealment". [Doc. 104 at 10–11]. To accept such proposition in this action would amount to requiring the non-moving party at summary judgment to prove its case as a matter of law, without the benefit of trial. Such a result would stand *Federal Rule of Civil Procedure* 56 on its head. *See* note 4 *infra.*

4. Defendant argues that since Plaintiffs cannot prevail on the fraudulent concealment counts in their complaint, they should not be available to toll the limitations period. However, the test under the fraud tolling statute, *i.e.* title 6, section 2–3, is not whether Plaintiffs can survive a motion for summary judgment on the fraud counts. Rather, the appropriate test is delineated in *Hicks, supra,* and the Court has applied that test here. Furthermore, *Holdbrooks* and *Sellers, supra,* make it clear that section 2–3 can toll tort actions other than fraud, including actions based on nuisance, negligence, recklessness and willfulness, regardless of whether a plaintiff can ultimately prove a claim of fraud.

Plaintiffs argue that if because of fraudulent concealment a claim was not, in the words of section 2A–203, "existing" at the time of dissolution, then the survival statute does not prevent a dissolved corporation from suing on claims that are otherwise precluded. Plaintiffs further argue that they can bring an action in their individual capacity after dissolution of Park Center Incorporated "for interests in tangible real and personal property", namely "the real property made the basis of this suit".

In *Hutson v. Fulgham Industries, Inc.*, 869 F.2d 1457 (11th Cir.1989), the Eleventh Circuit extensively surveyed the coverage of the survival statute. The Court of Appeals noted that the Alabama survival statute does not act as a statute of limitations, but rather, acts as a limitation on the capacity of the corporation to sue or to be sued. However, the statute does not supplant the common law rule of equity that shareholders succeed to certain classes of a dissolved corporation's assets. Those shareholders may maintain an action to recover such assets beyond the statutory wind-up period. *Fulgham, supra,* 869 F.2d at 1460.

The corporate assets that devolve upon former shareholders are, according to the Eleventh Circuit,

> "primarily claims to title in some fixed corporate asset or real property. Some jurisdictions have expanded the [equitable] rule's application to other forms of corporate assets. The equitable rule states that after dissolution the former shareholders *in their individual capacity* may then bring claims for the corporate property. The rule, however, does not apply to derivative claims that shareholders could have asserted in their capacity as shareholders. Thus, the classes of assets that courts have held to devolve to shareholders upon dissolution are primarily interests in tangible real and personal property and corporate claims asserted within the wind-up period."

*Fulgham, supra,* 869 F.2d at 1461 (citations omitted) (emphasis in original). The Eleventh Circuit went on to hold that the Alabama survival statute extinguished unasserted tort claims not brought within the two-year Alabama wind-up period, and that such claims fell within a category of corporate claims that the survival statute clearly intended to prohibit after the wind-up period. *Id.* at 1463–64. The Court of Appeals noted that the sort of assets that would devolve on shareholders after dissolution consisted of "corporate claims reduced to judgment in which only a mere collection is necessary," and tort and contract claims that are asserted or properly assigned within the wind-up period. *Id.* at 1463, 1464.

The survival statute "makes clear that the corporation or its shareholders, directors or officers must [assert] existing corporate claims, whether in contract or tort, within the two year wind-up period to survive dissolution." *Id.* at 1461. Park Center Incorporated was dissolved on December 31, 1986. The survival statute would therefore preclude Park Center Incorporated from filing this action after December 31, 1988. Having filed this lawsuit on September 26, 1990, Park Center Incorporated consequently has no legal personality or capacity to bring this action, unless the claims asserted "are the types of corporate assets that devolve to shareholders upon dissolution". *Fulgham, supra,* 869 F.2d at 1461. No claims having been filed by December 31, 1986, there are no claims that can devolve upon Plaintiffs and former shareholders Marr and Friedlander, who therefore likewise lack capacity to bring any claims on behalf of Park Center, Incorporated. As a result, under both the survival statute and the equitable rule, Park Center Incorporated, and Marr and Friedlander may not, as a matter of law, pursue those claims after December 31, 1988.

Plaintiffs contend that section 2A–203 has no application to this case because Park Center Incorporated was dissolved before the claims accrued. In essence, Plaintiffs are attempting to create a conflict between title six, section 2–3 of the Alabama Code, which tolls the statute of limitations on fraud and related tort claims, and the survival statute, which Plaintiffs

seek to "toll" on the grounds that its fraud claims did not exist at the time of dissolution.

Plaintiffs err in assuming that the survival statute is subject to tolling. The survival statute is intended to provide a two-year period in which to wind-up definitively any corporate affairs, while retaining the equitable rule that fixed corporate assets pass to former shareholders following the wind-up period. *Fulgham, supra,* 869 F.2d at 1464. The Alabama survival statute does not act as a statute of limitations, but rather, it acts as a limitation on the capacity of the corporation to bring suit. *Id.* at 1460. In other words, there is nothing to toll here, and the principle of fraudulent concealment has no application to a corporate survival statute. *Canadian Ace Brewing Co. v. Anheuser–Busch, Inc.,* 448 F.Supp. 769, 771–72 (N.D.Ill.1978), *aff'd,* 601 F.2d 593 (7th Cir.), *cert. denied,* 444 U.S. 884, 100 S.Ct. 175, 62 L.Ed.2d 113 (1979).

Additionally, Plaintiffs Marr and Friedlander essentially argue that as stockholders of a dissolved corporation they are the equitable owners of its assets, which allegedly include the right to pursue an unaccrued, fraudulently concealed cause of action.[5] [Doc. 98 at 20–21]. The Court has already rejected this contention. The Court also rejects Plaintiffs' contention that the status of Marr and Friedlander as guarantors of Park Center Incorporated's debt at the building confers standing on them to sue on behalf of the defunct corporation. This is not the law in the state of Alabama, and there is no such exception to the survival statute. *See generally Fulgham, supra.*[6]

As a result of the foregoing, Defendant is entitled to judgment as a matter of law with respect to the claims asserted by Park Center Incorporated, and by Marr and Friedlander as shareholders and otherwise on behalf of Park Center Incorporated. Accordingly, Defendant's motion for summary judgment as to capacity to sue is hereby GRANTED.

### III. Nuisance

Plaintiffs claim that defendant's conduct "created a nuisance ... and substantially reduced the value of plaintiffs' property as described [in the complaint]. Said nuisance continued until CHAMPION removed the paneling in November[,] 1988." [Doc. 65, ¶¶ 45–46]. Plaintiffs also allege separate reckless and wanton creation of nuisance claims based on the same facts. Defendant moves for judgment on the pleadings on these claims on the ground that they are legally insufficient.

On a motion for judgment on the pleadings, Federal Rule of Civil Procedure 12(c) requires the Court to view the pleadings in the light most favorable to, and to draw all reasonable inferences in favor of, the nonmovant. *MaDonna v. United States,* 878 F.2d 62, 65 (2nd Cir.1989). The Court may grant judgment on the pleadings if it appears beyond doubt that the non-movant can plead or prove no set of facts in support of his claim which would entitle him to relief. *Id.* (citation omitted); *United States v. Wood,* 925 F.2d 1580, 1581 (7th Cir.1991). Judgment on the pleadings is also appropriate where material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2nd Cir.1988). The Court may grant judgment on the pleadings only if, on the admitted facts, the moving party is clearly entitled to judgment. 2A Moore's Federal Practice, ¶ 12.15 at 12–106 (1992).

Title 6, section 5–120 of the Alabama Code broadly defines as a nui-

---

**5.** Contrary to Plaintiffs' arguments, there is no rule of law that would allow "continuous equitable owners" of an asset to press claims of a defunct corporation on that basis alone.

**6.** Plaintiffs contend that Park Center Inc., Marr and Friedlander continue to have liability as successors of Park Center Incorporated. Therefore, Plaintiffs argue that "they should continue the right to pursue unaccrued causes of action on behalf of Park Center Incorporated." [Doc. 98 at 17–18]. The Court has already rejected this argument, but adds that it finds the "successor corporation liability doctrine" irrelevant to the issues in this action.

sance "anything that works hurt, inconvenience or damage to another.... The inconvenience complained of must ... be such as would affect an ordinary reasonable man." ALA.CODE § 6–5–120 (1975). This definition is declaratory of the common law and does not supersede it as to other conditions and circumstances constituting a nuisance under common law. *Lauderdale County Bd. of Educ. v. Alexander*, 269 Ala. 79, 84, 110 So.2d 911 (1959) (interpreting identical 1940 statute). Section 5–120 must be liberally interpreted to effect its broadly stated purpose. *Tipler v. McKenzie Tank Lines*, 547 So.2d 438, 440 (Ala.1989). However, that which works hurt to another, to satisfy the statutory definition of a nuisance, must comport with the classical tort concepts of duty and causation. A defendant charged with creating a nuisance must have engaged in a course of conduct, or have permitted to exist a set of circumstances, that in its natural and foreseeable consequences, proximately causes the hurt, damage or inconvenience complained about. *Tipler, supra*, 547 So.2d at 440–41.

The Alabama courts have often described a private nuisance as "any establishment, erected on the premises of one, though for purposes of trade or business, lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable.... [O]ffensive odors ..., when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance." *Baldwin v. McClendon*, 292 Ala. 43, 48–49, 288 So.2d 761 (1974) (citations omitted); *see also* Prosser & Keeton on Torts, § 87 at 619–20 & n. 11 (1984 ed.) (marshaling cases) (private nuisance may consist of a disturbance by unpleasant odors of the comfort or convenience of an occupier of land).

At common law, the basic requirements of a private nuisance were that: 1) the defendant have acted with the intent of interfering with the use and enjoyment of the land by those entitled to that use; 2) there be some interference with that use and enjoyment of the kind intended, although the extent and amount of that interference may not have been anticipated or intended; 3) the interference that resulted and the physical harm, if any, from that interference must be substantial; and 4) the interference that came about under such circumstances was of such a nature, duration or amount as to constitute unreasonable interference with the use and enjoyment of the land. Prosser & Keeton on Torts, § 87 at 622–23 (1984 ed.). The intentional interference requirement is causing the interference with full knowledge that the harm to plaintiff's interests are occurring or substantially certain to follow. *Id.* at 624–25.

Plaintiffs contend that "Champion used its lupuna wood (by hiding it in paneling and selling it to the plaintiffs) to the detriment of the use and enjoyment the plaintiffs were entitled to make of their property". [Doc. 98 at 47]. Viewing the pleadings in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, the Court concludes that Defendant is not clearly entitled to judgment on the nuisance claims. Considering that offensive odors can constitute a private nuisance, and interpreting section 5–120 liberally to effect its broadly stated purpose, the Court holds Plaintiffs' complaint legally sufficient under these circumstances. It cannot be said that the lupuna wood odors affecting the building in this action under no set of factual circumstances could constitute an interference with Plaintiffs' use and enjoyment of the building.[7] Therefore, Defendant's motion

---

7. Defendant contends that Plaintiffs have failed to meet the Alabama definition of nuisance in that there has been no "establishment, erected on the premises of one ... directly caus[ing] substantial injury to the property of another, or produc[ing] material annoyance and inconvenience to the occupants of adjacent dwellings". Defendant points out that the nuisance in this case, if any, did not affect "the occupants of adjacent dwellings."

for judgment on the pleadings as to Plaintiffs' nuisance claims is hereby DENIED.

Defendant also seeks summary judgment on the nuisance claims. The materials in the record on summary judgment do not improve Defendant's position in regard to nuisance, as the facts as to the odors at the building are not seriously in dispute. The essential question here is whether Defendant is entitled to judgment as a matter of law on the nuisance claims. The Court holds that under these circumstances, Champion has failed to show that there is an absence of evidence in support of Plaintiffs' case, and the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Accordingly, Defendant's motion for summary judgment as to the nuisance claims is hereby DENIED.

## IV. Fraud & Other Tort Claims

### A. Suppression of Material Facts

Plaintiffs allege that Champion knew before it sold the paneling at issue here that lupuna wood had an increased propensity to emit odors and acids in hot and humid environments, that it deceptively distributed the paneling as "hillside birch" and "hillside oak", that its knowledge of such facts was superior to that of Plaintiffs' and their representatives, and that Champion was under a duty to communicate such knowledge to Plaintiffs' representatives at the time of purchase. [Doc. 74 at ¶¶ 12–13, 18, 21–24].

Title six, section 5–102 of the Alabama code sets forth the following definition of suppression of material facts:

"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties

or from the particular circumstances of the case."

ALA.CODE § 6–5–102 (1975).

### B. Intentional Misrepresentation

Plaintiffs allege that Defendant misrepresented the paneling at issue here by "describing" it as hillside oak and hillside birch when in fact it contained a lupuna wood core. Plaintiffs also claim that Defendant "willfully concealed the presence of lupuna wood (and its noxious side effects) in the paneling from the plaintiffs and their representatives in such a manner as to deceive and mislead them to induce them to purchase the paneling". [Doc. 74 at ¶¶ 27–28].

Title six, section 5–101 of the Alabama Code provides that "[m]isrepresentations of a material fact made willfully to deceive ..., and acted on by the opposite party, ... constitute legal fraud." ALA.CODE § 6–5–101 (1975). The code later states that "[w]illful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, falsehood constitutes an essential element. A fraudulent ... representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to knowledge of the falsehood." ALA.CODE § 6–5–103 (1975). Additionally, section 5–104 of the same title states inter alia that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers. [ ] A deceit within the meaning of this section is ... (3) [t]he suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that

---

While the Alabama courts have indeed often defined a nuisance in this manner, the definition of a nuisance both at common law and under section 5–120 is broad enough to encompass the conduct alleged here, which the Court can equally characterize as an interference that

"directly causes substantial injury to the property of another". See Baldwin, supra, 292 Ala. at 48–49, 288 So.2d 761. As Prosser and Keeton note, "[t]he essence of a private nuisance is an interference with the use and enjoyment of

fact." Ala.Code § 6–5–104(a), (b)(3) (1975).[8]

### C. Negligence, Recklessness & Willfulness

Plaintiffs also allege that Defendant failed to exercise due care in manufacturing, designing, selling and placing the paneling at issue in the stream of commerce, and additionally, that it recklessly manufactured, designed, sold and placed the paneling in the stream of commerce. Furthermore, Plaintiffs allege that Defendants acted in wanton disregard of their rights in so doing. [Doc. 65 at ¶¶ 31–36].

### D. Discussion

█ Defendant argues that Plaintiffs' allegations as to fraud, negligence, recklessness, and wantonness, even if true, allege such conduct on the part of Park Center Incorporated. Thus, as Park Center Incorporated is no longer a party to this action, under *Hutson, supra,* no other plaintiff may assert such claims in its place. [Doc. 92 at 8, 19]. The Court agrees.

On a motion for summary judgment, to be material, the disputed facts must be ones that, under the substantive law governing the issue, might affect the outcome of the suit. The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. *Holloway v. Pigman,* 884 F.2d 365, 366 (8th Cir.1989). The mere existence of factual issues, where those issues are not material to the claims before the Court, will not suffice to defeat a motion for summary judgment. *Id.; Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2nd Cir.1985).

Plaintiffs' allegations that Defendant suppressed material facts about the paneling at the time of sale, that Defendant willfully misrepresented the nature of the paneling so as to induce Plaintiffs into purchasing the paneling, and that Defendant negligently, wantonly and recklessly manufactured and sold the paneling all relate to Park Center Incorporated's purchase of the paneling in 1983. As the Court has earlier held that all claims brought by Park Center Incorporated are due to be dismissed because Park Center Incorporated or its shareholders failed to assert those claims within the two-year statutory wind-up period, the same reasoning also precludes Plaintiffs' remaining tort claims. By alleging conduct that harmed a defunct corporation with no legal capacity to sue, Plaintiffs have asserted a legal theory that is nonviable. Therefore, whether Defendant perpetrated a fraud or negligently sold the paneling to Park Center Incorporated is not a material fact. The disputed facts, if any, cannot affect the outcome of this action, because the central fact remains that claims alleging harm to Park Center Incorporated are a nullity, and are simply not actionable by Plaintiffs. Therefore, Defendant is entitled to judgment as a matter of law as to counts two through six of the amended complaint. Accordingly, Defendant's motion for summary judgment on Plaintiffs' claims for negligence, wantonness, recklessness, suppression of a material fact, and intentional misrepresentation is hereby GRANTED.

To summarize: Defendant's motion for summary judgment as to the statute of limitations is hereby DENIED. Defendant's motion for judgment on the pleadings on the nuisance claims is hereby DENIED. Defendant's motion for summary judgment on the nuisance claims is hereby DENIED. In all other respects, Defendant's motion is due to be, and hereby is, GRANTED.

---

land." Prosser & Keeton on Torts, § 87 at 619 (1984 ed.).

**8.** Section 5–104 also defines deceit as "(1) [t]he suggestion as a fact of that which is not true by one who does not believe it to be true; (2) [t]he assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; [and] (4) [a] promise made without any intention of performing it." Ala.Code § 6–5–104(b)(1–2), (4) (1975).