Floyd **SIMPSON and John Huggins d/b/a Simpson–Huggins Drywall, Plaintiffs,**

v.

**STO CORPORATION, Defendant.**

**Civil Action No. 95–D–636–N.**

United States District Court, M.D. Alabama, Northern Division.

Oct. 2, 1996.

Randy A. Myers, Montgomery, AL, for plaintiffs.

Richard H. Gill, Montgomery, AL, Douglas J. Centeno, Birmingham, AL, Timothy J. McGaughey, Donald R. Harkleroad, Atlanta, GA, for defendant.

## *MEMORANDUM OPINION AND ORDER*

DE MENT, District Judge.

This matter is now before the court on Defendant Sto Corporation's ("Sto") motion for summary judgment filed on July 15, 1996. Plaintiffs, John Huggins and Floyd Simpson ("Plaintiffs"), responded in opposition to Defendant's motion on August 7, 1996.

After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Defendant's motion for summary judgment is due to be denied.

### *JURISDICTION*

The court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest personal jurisdiction or venue.

## STATEMENT OF FACTS

The Plaintiffs conduct business as a partnership called Simpson–Huggins Drywall ("Drywall"). Floyd Simpson Dep. at 18–23. The partnership is a sheetrock subcontractor which also installs exterior finish systems ("EIFS") on buildings. *Id.* These finishes are exterior building finishes which resemble stucco and are generally referred to as Dryvit. *Id.* at 44–45. In 1992, Drywall appointed Allen Simpson, brother of Plaintiff Floyd Simpson, to head its EIFS business. *See* Floyd Simpson Dep. at 95. Allen Simpson chose to purchase R–Wall, an EIFS sold by Sto. Allen Simpson Dep. at 95. In Alabama, R–Wall was distributed exclusively by Building Materials Wholesale ("BMW") which only sold R–Wall to Sto-approved applicators. Pl.'s Resp. Def.'s Mot. Summ. J. Exhibit 8. BMW was the exclusive Alabama distributor for R–Wall from 1992 through 1994. *See id.*

Plaintiffs began applying R–Wall beginning in 1992 but did not notice any problems from its use until late 1993 or early 1994. Pl.'s Resp. Def.'s Mot. Summ. J. at 6. At that point, the Plaintiffs noticed that rust spots had begun to appear on the exterior of buildings on which R–Wall had been applied. Allen Simpson Dep. at 113–15. The parties differ significantly over the number and severity of the rust problem, but there is no dispute that some buildings did show signs of rust. See Def.'s Mot. Summ. J. at 5. The Plaintiffs contend that Sto knew that R–Wall contained iron particles and was prone to rust problems but failed to disclose this characteristic to Plaintiffs.[1] Pl.'s Resp. Def.'s Mot. Summ. J. at 4; *see also* Robert Montigel Dep. at 15. The Plaintiffs contend that these rust problems severely damaged their EIFS business in particular and their business reputation in general. Pl.'s Resp. Def.'s Mot. Summ. J. at 7–8. Sto contends that the Plaintiffs can identify no damages since the EIFS business was unprofitable, the drywall portion of the business was unaffected, and the lost profits evidence is insufficient. Def.'s Mot. Summ. J. at 1–2.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53.

---

1. R–Wall was originally made from a quartz aggregate which contained iron particles. Ed West Dep., Exhibit 6. Sto eventually switched to a marble aggregate in an effort to avoid rust problems. *Id.*

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### DISCUSSION

The Plaintiffs contend in Count I of their complaint that Sto committed fraudulent suppression. In Count II, the Plaintiffs contend that Sto breached its implied warranty of merchantability by selling a product not fit for the particular purpose for which it was intended. Sto did not raise Count II in its motion for summary judgment and the court finds that Count II survives Sto's motion for summary judgment.

■ In order to prove a prima facie case of fraudulent suppression in Alabama, a plaintiff must show:

"(1) [T]hat the defendant had a duty to disclose an existing, material fact; (2) that the defendant had actual knowledge of the fact and its materiality; (3) that the defendant suppressed that fact; (4) that the plaintiff's lack of knowledge concerning that fact induced [him or] her to act; and

(5) that [he or] she suffered actual damage as a proximate result of [his or] her acting."

*Liberty Nat. Life Ins. Co. v. McAllister*, 675 So.2d 1292 (Ala. Feb. 24, 1995), *cert. dismissed*, —— U.S. ——, 116 S.Ct. 688, 133 L.Ed.2d 593 (1995); *see also Dodd v. Nelda Stephenson Chevrolet Inc.*, 626 So.2d 1288, 1293 (Ala.1993); *Brown v. Mendel*, 864 F.Supp. 1138, 1146–47 (M.D.Ala.1994), *aff'd*, 84 F.3d 393 (11th Cir.1996); *Crowder v. Memory Hill Gardens, Inc.*, 516 So.2d 602, 604 (Ala.1987); Ala. Code § 6–5–102 (1993). The court recognizes that "[a] plaintiff attempting to prove fraudulent suppression need not prove an intent to deceive; the plaintiff only has to prove a breach of the defendant's duty to disclose the suppressed facts." *Id.* (citing *Baker v. Bennett*, 603 So.2d 928 (Ala.1992), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1260, 122 L.Ed.2d 658 (1993)).

■ Only two of the five suppression elements are in serious dispute: (1) Sto's duty to disclose and (2) Plaintiffs' damages from the alleged failure to disclose.[2] The parties dispute whether Sto had a duty to disclose the fact that R–Wall contained iron particles. Sto contends that it had no duty to disclose since the Plaintiffs had knowledge of the potential rust problem prior to purchasing R–Wall and the parties dealt with each other at "double arm's length." Def.'s Br. Supp. Summ. J. at 12–14. The Plaintiffs contend that the particular facts of the case impose a duty of disclosure upon Sto. Pl.'s Br. Opp'n. Mot. Summ. J. at 8–9. Sto also contends that the Plaintiffs have no viable claim for damages. The court disagrees with Sto's contentions and finds that Sto had a duty to disclose and the Plaintiffs have a viable claim for damages.

■ A duty to disclose may arise from various sources: "a confidential relationship, ... a request for information, or ... the particular circumstances of the case." *Hines v. Chevrolet–Olds, Inc.*, 655 So.2d 909, 918 (Ala.1994). There is no evidence of a confidential relationship or request for information in this action. Therefore, the particular

---

**2.** Sto also contends that the Plaintiffs must prove fraudulent intent to prove the fraudulent suppression claim. Def.'s Br. Supp. Summ. J. at 11–12. The court's finding in the preceding paragraph that a plaintiff must only prove a breach of the duty to disclose eliminates this argument.

circumstances of the relationship between Sto and the Plaintiffs provide the only possible basis for Sto's alleged duty to disclose. To determine if a duty to disclose "arises in the particular circumstances of a case depends on the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances." *Id.*

However, parties to an arm's length transaction where there is no confidential relationship or request for information are under no duty to disclose. *Trio Broadcasters, Inc. v. Ward,* 495 So.2d 621, 623 (Ala. 1986). For instance, in *Trio Broadcasters* the Alabama Supreme Court held that a duty to disclose "does not arise where the parties to a transaction are knowledgeable and capable of handling their own affairs." *Id.* at 634. On the other hand, in situations where "one party has superior knowledge of a fact that is unknown to the other party, and the lack of knowledge will induce the other party to act in a manner in which he otherwise might not act, the obligation to disclose is 'particularly compelling.'" *McAllister,* 675 So.2d at 1296 (quoting *Baker,* 603 So.2d at 935).

These various holdings convince the court that it is unable to resolve this issue without making further findings on the particular circumstances in this action.[3] As mentioned previously, a court must examine three factors when determining the existence of a duty to disclose: (1) the relationship of the parties; (2) the value of the facts allegedly suppressed; and (3) the relative knowledge of the parties. *McAllister,* 675 So.2d at 1296. In this action Sto marketed its product through BMW, its exclusive Alabama distributor. Sto allowed only approved EFIS applicators, such as the Plaintiffs, to purchase the R–Wall EFIS product from BMW. Therefore, the Plaintiffs were part of the expected consumer group which would use R–Wall. Since the Plaintiffs were part of a group or class which Sto expected or had reason to suspect would be influenced by Sto's alleged

decision to not disclose information about the alleged rust-causing nature of R–Wall, the court finds that the relationship between Plaintiffs and Sto is sufficient to impose a duty to disclose on Sto. *Hines,* 655 So.2d at 920 (holding that General Motors ("GM") had a sufficient relationship with a prospective car buyer to impose a duty on GM to disclose repainting of a new car).

R–Wall's alleged rust problems would have been valuable information from the Plaintiff's perspective. While Sto insists that Plaintiffs knew that Dryvit products had rust problems, having knowledge of rust problems in the generic product group is a far cry from having knowledge that R–Wall was prone to rust problems. *See* Def.'s Mem. Br. Supp. Mat. Summ. J. at 12. A jury could reasonably infer from the evidence offered by the Plaintiffs that R–Wall's tendency to rust was a valuable fact for the Plaintiffs. Therefore, the court finds that the value of the alleged rust prone condition is enough to impose a duty to have disclosed on Sto.

Finally, the court must be satisfied that the knowledge of the parties warrants disclosure. Generally, a court should examine the relative knowledge of each party to determine whether disclosure is warranted. *See Baker,* 603 So.2d at 935; *Trio,* 495 So.2d at 621. Expressed another way, this test requires a court to examine the relative availability of information, the relative expertise of the parties, and the relative cost of acquiring the information and expertise. *Hines,* 655 So.2d at 921. In this matter, the court finds that the alleged rust characteristics of R–Wall were available to Sto but much less available to Plaintiffs. Likewise, Sto has much more expertise in understanding the properties of its products than the Plaintiffs, who merely apply an off-the-shelf product as an adjunct to their drywall business. Additionally, the Plaintiffs would face significant challenges in learning the alleged rust prone nature of R–Wall. For all these reasons, the

---

**3.** For instance, Sto contends that the Plaintiffs are precluded as a matter of law from recovering on their suppression claim because BMW, not Sto, actually sold the R–Wall to Plaintiffs. Def.'s Br. Mot. Supp. Mot. Summ. J. at 14 (citing *Park Ctr., Inc. v. Champion Int'l Co.,* 804 F.Supp. 294 (S.D.Ala.1992)). However, the Alabama Supreme Court in *Hines v. Riverside Chevrolet–Olds,*

*Inc.,* 655 So.2d 909, 920 (Ala.1994), stated that "[t]he absence of a contractual relationship or other dealings, therefore, likewise does not preclude the finding of a relationship on which to base a duty to disclose." This example illustrates the fact-specific inquiry required to properly resolve a duty to disclose dispute.

court finds that Sto had the requisite level of knowledge to force upon it a duty to disclose the alleged rust prone nature of R–Wall.

 Sto also alleges that Plaintiffs' suppression claim must fail for lack of damages. Def.'s Br. Supp. Mot. Sum. J. at 14–15 ("there are no tort or contract damages that Plaintiffs may collect"). However, according to the Eleventh Circuit, "the determination of damages is a question of fact for the jury to resolve." *Wolff v. Allstate Life Ins. Co.,* 985 F.2d 1524, 1532 (1993) (holding that wife's contention that she would have secured alternative life insurance for her husband if she had been aware of the termination of a prior policy of insurance was sufficient to support a jury verdict for the plaintiff). While Sto insists that the Plaintiffs have produced no evidence of loss of reputation or losses from potential lawsuits, the court finds that the Plaintiffs' alleged damage to their business reputation is sufficient to allow a reasonable jury to find damages.[4] Therefore, the court finds that the issue of damages is more appropriately left to the judgment of the trier of fact at trial. In summary, the court finds that the Plaintiffs' fraudulent suppression claim is a matter for the jury to decide since Sto's motion for summary judgment on Count I is due to be denied.

Sto also claims that the Plaintiffs are not "real parties in interest and cannot recover individually." Def.'s Br. Supp. Mot. Summ. J. at 16–17. As support Sto cites *Strother v. Strother,* 436 So.2d 847 (Ala.1983), which deals with the identification of partnership assets in an attempt to establish a resulting trust. This opinion does not support Sto's assertion. In addition, the Alabama Supreme Court's decision in *Metzger Brothers v. Friedman,* 261 So.2d 398 (1972), inferentially supports an individual's right to sue where the injury allegedly inured to the partnership. In the absence of any further legal support from Sto, the court finds that the Plaintiffs may continue their action in their individual capacities. Therefore, the court

finds that Sto's motion for summary judgment is due to denied in full.

### CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendant's motion for summary judgment be and the same is hereby DENIED.

---

**4.** Sto also contends that the Plaintiffs have produced no evidence which would support a claim for lost profits damages. Def.'s Br. Supp. Mot. Summ. J. at 15–16. However, Sto cites only the general standard that lost profit damages are not allowed if the damages would be "too specula-tive." The court reserves ruling on this issue until discovery has closed. It is not clear that the Plaintiffs will be able to establish a claim for lost profits damages, but the court is unable to resolve this issue at this point.