Defendant, Lucky Manufacturing Company, appeals from a judgment entered on a jury verdict awarding damages to plaintiff, Activation, Inc. for Lucky's breach of contract. The questions for review concern certain evidentiary rulings and jury instructions by the trial judge, as well as its granting of Activation's motion for directed verdict regarding Lucky's counterclaim for fraud
Activation filed its action alleging Lucky's failure to pay for equipment and merchandise ordered and received from Activation, and also seeking damages for the contract price, costs of collection, and reasonable attorney's fees. Lucky counterclaimed for breach of warranty and fraud, alleging the equipment supplied was defective and its quality was misrepresented, whereupon Activation filed a third-party complaint against Webster Electric Company seeking indemnity, based on Webster's warranty as manufacturer of the equipment, for any amount for which Activation might be held liable to Lucky
At the close of Lucky's case, the court granted Activation's motion for directed verdict on the counterclaim for fraud. The jury returned a verdict for Activation in the amount of $22,739.14. Implicit in that verdict was a denial of relief to Lucky on its remaining counterclaim.[1] Lucky's motion for judgment notwithstanding the verdict, or in the alternative for a new trial, was denied and this appeal ensued
Lucky is a manufacturer of log loading machinery. The principal moving parts of this machinery are activated by a system utilizing fluid pressurized by a hydraulic pump
During 1976 and 1977, Lucky purchased a substantial number of hydraulic pumps and related components from Activation, a dealer in hydraulic equipment, for use in a new model of log loader, Lucky's 818, which it had developed in recent years The pumps sold by Activation to Lucky were manufactured by Webster. The same type of Webster pump had been utilized in Lucky's 818 prototype, which was tested from April 1974 to April 1975; however, the Webster pump incorporated in the prototype was sold to Lucky by Fluid Dynamics, Inc., a competitor of Activation *Page 902 
Although Lucky encountered no problems with the Webster pump when testing the prototype, Lucky installed, in the initial 818's it placed on the market, more expensive hydraulic pumps manufactured by Commercial Shearing, a brand which it had been using in another model of log loader. When Activation offered Webster pumps at a price lower than that at which Fluid Dynamics could provide the same, however, Lucky began to purchase from Activation Webster pumps for installation in the 818's
Many of Lucky's customers who purchased the 818's in which Activation supplied Webster pumps experienced failures of those pumps. Bobby Lucky, president of Lucky, testified that he knew of about 35 such failures; 18 pumps were returned to either Activation or Webster
Disputes concerning the cause of the pump failures arose and, as a result, Lucky refused to pay approximately $16,000 of its account owed Activation. This account included charges for a substantial quantity of equipment other than hydraulic pumps This action ensued
At trial, Activation presented evidence of Lucky's due account and rested its case. Lucky countered with evidence of specific pump failures, largely through the testimony of Don Hawkins, who retailed and serviced Lucky machinery in Arkansas Lucky also adduced testimony, controverted by Activation, that during the sales negotiation Activation's representative assured Bobby Lucky that "the Webster pump was as good or better than a Commercial Shearing pump"; that alleged representation was the sole basis of the counterclaim for fraud. The evidence offered by both Activation and Webster, based primarily on expert analysis of the failed pumps and the oil used therein, tended to show that the pump failures were caused by overpressurization and contaminated oil and not defects in manufacturing
Lucky's principal contentions on appeal concern the trial court's sustaining objections to certain questions propounded to Don Hawkins by counsel for Lucky. Hawkins conducted a sales and service business, at Sheraton, Arkansas, known as Don's Hydraulic Sales and Service. Lucky argues that it was error not to allow Hawkins to testify as an expert regarding: (1) the effectiveness of the valve bank installed on the machine (for the purpose of rebutting the contentions of Activation and Webster that the pump failures were caused by over-pressurization); (2) the normal use expectancy of hydraulic pumps in similar systems; (3) the lack of problems experienced with Commercial Shearing pumps used to replace the Webster pumps which failed; and (4) loss of reputation to the 818 resulting from use of the Webster pumps and the failures of those pumps
The determination of whether a witness is competent to testify as an expert on a particular subject is within the discretion of the trial judge, whose ruling will not be disturbed on appeal unless it was a patent abuse of that discretion. Ford Motor Co. v. Rodgers, 337 So.2d 736 (Ala 1976)
The specific portions of the record cited by Lucky reveal that the first question regarding the valve bank (alluded toante) was properly sustained because no predicate regarding Hawkins' qualifications as an expert had, at that point, been laid by counsel for Lucky. The remaining objections to questions about the valve banks were sustained on grounds of irrelevancy
Similarly, objections to testimony about performance of Commercial Shearing pumps installed after removal of the failed Webster pumps were sustained on grounds of irrelevancy. Lucky's contentions regarding Hawkins' qualifications as an expert have no bearing on those objections which were sustained on bases of irrelevancy
Neither do arguments regarding Hawkins' qualifications relate to the trial court's refusal to permit Hawkins to testify regarding any injury to the reputation of the 818's because they were equipped with Webster pumps
About the question seeking Hawkins' opinion of "the normal use expectancy of a pump in a hydraulic system of like kind", objection was first sustained for failure to *Page 903 
lay a proper predicate, since counsel for Lucky had not at that point elicited from Hawkins his qualifications with respect to hydraulic equipment. Counsel for Lucky then proceeded to properly lay the foundation of Hawkins' expertise in hydraulics, but when the question regarding normal use expectancy was repeated, objection was again made and the objection sustained:
 Q: Based on your experience, do you have a judgment as to what the normal life expectancy of a pump of like kind on this type of hydraulic system would be?
 MR. HUGHES: Your Honor, I object to that, like kind alone I think would make that objectionable
THE COURT: Sustained. [Emphasis added.]
Although the ground for this objection was not clearly enunciated by counsel for Activation, it is apparent from the language used that the objection, and ruling thereon, were based upon grounds of relevancy rather than upon the witness's qualifications as an expert. Therefore, it follows that Lucky's attack on the latter ground was without merit
Lucky's final contention relating to Hawkins' testimony is that the trial court erred in sustaining Activation's objections, on the grounds of irrelevancy, to questions about the performance of Commercial Shearing pumps which replaced the failed Webster pumps in the 818's. According to Lucky, evidence of the lack of problems experienced with the 818's after Commercial Shearing pumps were installed is clearly relevant to support its counterclaim for fraud, by tending to show the falsity of the alleged representation by Activation's agent that "the Webster pump was as good or better than a Commercial Shearing pump." This alleged representation also served as an express warranty, Lucky maintains, and evidence about the Commercial Shearing pumps' performance would tend to prove a breach of that warranty
We cannot conclude that the trial court exceeded its broad discretion in excluding this testimony of dubious probative value; testimony that a Cadillac does not burst into flames when hit from the rear would have no bearing on whether a Pinto which did so contained a design defect
Furthermore, had this testimony been admitted, it could not have altered the end result in light of our decision, infra, on the directed verdict and on the issue of whether the alleged representation constituted an express warranty. Before addressing those matters, however, there remain several other contested evidentiary rulings relating to the testimony of Thomas Faust, a salesman for Activation who investigated the pump failures
Counsel for Lucky questioned Faust concerning conversations he had with Homer Urquhart, at that time president of Activation and also a mechanical engineer, seeking to elicit from Faust statements made by Urquhart as to possible reasons for the pump failures other than those offered by Webster's experts. Objections to three such questions were sustained Although the objections entered did not specifically state that the grounds were hearsay, the pertinent portions of the colloquy, which follow, reveal that hearsay was the basis of the objection and the trial court's ruling
 Q: And your boss told you that he didn't see how that could be possible, because this was a fixed volume pump that was directly hooked — directly powered by the engine, did he not?
 MR. HUGHES: Object to the conversation between the two of them
 THE COURT: Sustained . . .
 Q: Did you and Mr. Urquhart talk about, well, probably some bad bearings in the pump is causing the failure?
MR. HUGHES: Objection to what he talked about
THE COURT: Sustained
. . .
 Q: . . . did you and Mr. Urquhart have any discussions with each other about the pump probably or likely being caused to fail by bad bearings?
MR. HUGHES: Same objection
THE COURT: Sustained *Page 904 
 Q: Did you and Mr. Urquhart talk to each other about the probability that the tolerances or the alignments of the pumps were off and that was causing the failure?
MR. HUGHES: Same objection
THE COURT: Sustained
With respect to these objections, Lucky's brief states that surely Activation could not be objecting because the contents of the conversations were hearsay, when this would be true only if Activation sought to prove the contents of them. Lucky offers no authority in support of this strange proposition, and for good reason: "hearsay includes every human statement, not made in the process of testifying as a witness in the present trial or confined in a deposition taken for use in the present trial, offered as tending to prove the truth of the matter asserted." Gamble, McElroy's Alabama Evidence § 242.01 (1) (3d ed. 1977); see also Cleary, McCormick on Evidence 584 (1972); 5 Wigmore, Evidence § 1362 (Chadbourn rev. 1974). Obviously, the questions posed by Lucky sought answers proscribed by the hearsay rule. Whether those answers might be categorized as exceptions to the hearsay rule or have been admitted for another purpose, such as impeachment, need not be addressed because counsel for Lucky failed to make an offer of proof preserving any error in that regard. See Rule 43, ARCP
More generally, Lucky complains it was denied a thorough and sifting cross-examination of Faust about the fact that he acquired only one oil sample during his investigation of the pump failures. Counsel for Lucky questioned Faust concerning specific purchasers of Lucky Log loading machinery from whom Faust did not attempt to obtain oil samples. Objections to these questions on the grounds of irrelevancy were sustained The purpose of this line of questioning, according to Lucky, was to show that Activation made less than a wholehearted effort to obtain representative oil samples
We cannot accept Lucky's argument that these rulings constitute reversible error. The trial court has the discretion to reasonably limit the range of cross-examination with respect to collateral and irrelevant matters, or with respect to matters that unnecessarily consume time in the trial of a caseWright v. State, 49 Ala. App. 539, 274 So.2d 95 (1973); McCainv. State, 46 Ala. App. 627, 247 So.2d 383 (1971); Powell vPowell, 285 Ala. 230, 231 So.2d 103 (1970)
On cross-examination by Lucky, Faust testified he obtained only one oil sample, and sought no other samples, because he was denied permission to do so by Lucky's president. Further inquiries into whether other samples were procured from specific customers were merely repetitive of that point which had been clearly made. The trial court acted well within its discretion in requiring counsel for Lucky to move on to another line of questioning
Further, Lucky complains of error in the trial court's grant of Activation's motion for directed verdict on Lucky's counterclaim for fraud
It is a well-established principle that if a legitimate inference furnishes a scintilla of evidence in support of the theory of a claim in the complaint, that claim must go to the jury. It is equally well-established, however, that where there is no legitimate evidence supporting the charge made by the claim, but rather the evidence shows the claim is based on speculation and conjecture, then, in that event, the claim should not be submitted to the jury. Whaley v. Lawing,352 So.2d 1090 (Ala. 1977); Commercial Fire Insurance Company ofNew York v. Parvin, 279 Ala. 645, 189 So.2d 330 (1966); Perduev. Mitchell, 373 So.2d 650 (Ala. 1979). Furthermore, evidence supporting each element of the claim in question must be presented before the case is allowed to go to the jury. StateSecurity Life Insurance Co. v. Henson, 288 Ala. 497,262 So.2d 745 (1972)
The essential elements of a fraud claim are found in Code 1975, § 6-5-101:
 Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the *Page 905 
opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud
This court has noted that both reliance and damages are essential elements to be proved in fraud actions. Woodham vNationwide Life Insurance Co., 349 So.2d 1110 (Ala. 1977) Regarding the element of reliance in an action for fraud in Alabama the Fifth Circuit Court of Appeals, in First VirginiaBankshares v. Benson, 559 F.2d 1307 (5th Cir. 1977), noted the requirements of showing:
 (c) reliance by the plaintiff on the representation and that he was deceived by it, Bynum v. Rucker, 235 Ala. 353, 179 So. 241 (1938);
 (d) reliance which was justified under the circumstances, Fidelity Cas. Co. v. J.D. Pittman Tractor Co., 244 Ala. 354, 13 So.2d 669 (1943);
 (e) damage to the plaintiff proximately resulting from his reliance. Smith v. Smith, 266 Ala. 118, 94 So.2d 863 (1957)
Review of the record in this case shows a complete lack of evidence of the critical element of reliance. Lucky contends that the alleged statement by Activation's representative that the Webster pump was "as good or better" than a Commercial Shearing pump was the representation upon which it relied to its detriment. Wholly apart from the fact that such comments constitute "traders' talk," or "puffery," as discussed in connection with warranty questions, infra, there is no merit to the argument that such representation was a material fact upon which Lucky relied, in light of the uncontroverted evidence that Lucky had previously purchased the same type of Webster pump from another dealer and tested it in the 818 prototype for at least a year. Consequently, there could be no finding of fraud as a matter of law. Directing a verdict on that count of the counterclaim was proper
Lucky next challenges three aspects of the court's charge to the jury: (1) refusal to give two requested instructions, (2) an instruction given on express warranties, and (3) an alleged improper comment on the evidence
The first requested instruction, definition of a merchant under Alabama's commercial code, was offered in connection with Lucky's claim for breach of implied warranty of merchantability
However, the trial court's correct instruction on the implied warranty of merchantability as found in Code 1975, § 7-2-314, was presented in such a manner that Activation's status as a merchant was an assumed fact. Therefore, this requested instruction would have been mere surplusage
The other requested instruction was simply the general policy statement that the commercial code is to be interpreted liberally so as to put an aggrieved party in as good a position as he would have been had he not been wronged. This is such a vague and general instruction that no harm arises from failure to give it; indeed, Lucky alleges harm only in conclusionary terms with no specific indication of how it considers it was harmed by not having the jury so instructed
Lucky also complains that the court's instruction precluded the jury from finding any express warranty other than the written warranty included in Webster's description of the pump It contends Activation's representation that the Webster pump was "as good or better" than a Commercial Shearing pump constituted an "affirmation of fact or promise" made a "part of the basis of the bargain" within the meaning of Code 1975, §7-2-313, which created an additional express warranty under that statutory provision. This proposition is without merit in light of Code 1975, § 7-2-313 (2), which recognizes that "a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."
Finally, Lucky argues that the trial judge improperly commented on the evidence in his jury charge by saying: ". . the Defendant admitted receipt of the merchandise in question and made no serious denial during the trial concerning the receipt *Page 906 
or concerning the existence of the amount." Lucky contends that "receipt" was in dispute because the merchandise received was not that contracted for and, further, that the amount was in question because of Lucky's counterclaim. This is sophistry The trial court did not opine either that the goods received conformed to the contract (as defined in § 7-2-106 (2)) or that the amount shown on Activation's bills was the amount which the jury should award. The sense of his remark was that Lucky did not deny receiving goods from Activation nor did it introduce evidence controverting the price shown on Activation's bills rendered for those goods. Viewed as a whole, the trial court's instructions properly delineated the issues and instructed the jury on its duty as the trier of fact
Because we find no reversible error in the record, the judgment below is due to be and is hereby affirmed
AFFIRMED
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur
[1] Activation sued for $16,013.68 balance due and $5,337.89 attorneys' fees. The trial court's instructions disallowed attorneys' fees, and remittitur was ordered bringing the sum to $18,495.00 (balance due plus 6% interest).