**ALIMENTA (U.S.A.), INC.,**
**Plaintiff-Appellant,**

v.

**ANHEUSER–BUSCH COMPANIES,**
**INC., Defendant-Appellee,**

**ALIMENTA (U.S.A.), INC.,**
**Plaintiff-Appellant,**
**Cross-Appellee,**

v.

**ANHEUSER–BUSCH COMPANIES,**
**INC., Defendant-Appellee,**
**Cross-Appellant.**

Nos. 85–8686, 85–8859.

United States Court of Appeals,
Eleventh Circuit.

Nov. 10, 1986.

As Amended Nov. 26, 1986.

---

See also, D.C., 99 F.R.D. 309.

W. Lyman Dillon, Atlanta, Ga., for plaintiff-appellant, cross-appellee.

Robert N. Meals, Larry H. Chesin, A. Lee Parks, Jr., Atlanta, Ga., for defendant-appellee, cross-appellant.

Before VANCE and EDMONDSON, Circuit Judges, and ALLGOOD *, Senior District Judge.

## CORRECTED OPINION

ALLGOOD, Senior District Judge:

On September 17, 1984, the district court entered a final judgment, ruling that Anheuser-Busch Companies, Inc. (Anheuser) was liable for approximately twelve metric tons of peanuts it had processed; that Anheuser properly revoked acceptance as to approximately 148 metric tons of peanuts it had blanched; and that Anheuser had rightfully rejected the remaining 1040 metric tons it had neither blanched nor processed. The court further ruled that the parties were to bear their own costs. Alimenta, Inc. (Alimenta) filed a timely motion

---

* Honorable Clarence W. Allgood, Senior U.S. District Judge, Northern District of Alabama, sitting by designation.

for judgment NOV, or in the alternative, for a new trial. This motion was denied on August 2, 1985, and Alimenta filed a Notice of Appeal Docket Number 85–8686, on August 29, 1985. On September 13, 1985, the district court Clerk resubmitted a Rule 59 motion filed by Anheuser on September 27, 1984. The district court denied this motion on October 22, 1985 and Alimenta filed a second notice of appeal, Docket Number 85–8859. On November 1, 1985, Anheuser filed a Notice of Cross Appeal. These two appeals, Docket Numbers 85–8686 and 85–8859, have been consolidated for determination.

FACTS:

Anheuser was seeking peanuts in the Fall of 1980. Alimenta supplied two samples of Malawi peanuts to Anheuser, and with Alimenta's knowledge, Anheuser fried, oil-roasted and tested the samples.

On December 17, 1980, the parties contracted for the sale of 700 metric tons of Malawi peanuts at $1.20 per pound, plus 500 metric tons of Malawi peanuts at $1.30 per pound. Alimenta delivered the peanuts, and Anheuser temporarily stored them in warehouses. Anheuser began test production runs with the peanuts, and complained that the peanuts had a terrible taste and gave off an awful odor.

Anheuser notified Alimenta of the problem, and tried to vary the roasting process in an effort to eliminate the bad taste and smell. The efforts proved unavailing, and six weeks after shipment of the peanuts, Anheuser formally notified Alimenta that it was rejecting the peanuts. Prior to this notice of rejection, Anheuser blanched 160 metric tons of peanuts, and honey roasted 25,000 pounds. Anheuser returned the peanuts, and Alimenta filed a complaint alleging that Anheuser was in breach of contract by virtue of its failure to pay for 1200 metric tons of peanuts. Anheuser counterclaimed against Alimenta for the damages it suffered in consequences of being shipped defective and non-conforming goods.

■ The first issue to be addressed by this court relates to jurisdiction. The dis-trict court entered its final judgment in this case on September 17, 1984. On September 27, 1984, Anheuser filed a motion, styled as a Rule 59 motion, which asked that the district court reconsider its decision to require each party to bear its own costs. Alimenta timely filed a motion for a judgment NOV or, in the alternative, for a new trial. Alimenta's motion was denied on August 2, 1985, and Alimenta filed a notice of appeal on August 29, 1985. Anheuser's Rule 59 motion was resubmitted to the court on September 13, 1985. The district court denied that motion on October 22, 1985. Alimenta then filed a second notice of appeal on October 25, 1985, in response to which Anheuser filed a timely Notice of Cross-Appeal. The issues created by this situation are whether Alimenta's first Notice of Appeal was valid, and whether Anheuser's Notice of Cross-Appeal, filed in response to Alimenta's second Notice of Appeal, is valid.

Rule 4(a)(4) of the *Federal Rules of Appellate Procedure* provides that:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: ... under Rule 59 to alter or amend the judgment ... the time for appeal for all parties shall run from the entry of the order ... granting or denying any ... such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect.

Seemingly, Alimenta's first notice of appeal filed during the pendency of Anheuser's Rule 59 motion is ineffective. However, Anheuser's "Rule 59" motion was not in fact a motion to alter or amend judgment. According to *Lucas v. Florida Power and Light Co.*, 729 F.2d 1300 (11th Cir.1984), "(a) motion respecting costs is not a motion to alter or amend a judgment under Rule 59. Rule 59 applies to motions for reconsideration of matters encompassed in a decision on the merits of the dispute and not matters collateral to the merits." *Id.* at 1301. In the present case, Anheuser's "Rule 59" motion in fact requests the court to tax the costs of the

action to the losing party. In keeping with Rule 4(a)(4) of the *Federal Rules of Appellate Procedure*, and with the *Lucas* case, Alimenta's first Notice of Appeal is valid. As to Anheuser's Notice of Cross-Appeal, it is ineffective. According to *Federal Rules of Appellate Procedure*, Rule 4(a)(3),

> If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

Anheuser's Notice of Cross Appeal was filed two months after Alimenta's first Notice of Appeal, and was therefore not timely filed.

■ The next issue to be addressed is whether the district court abused its discretion in excluding the testimony of Dr. John T. Powers, an expert witness for Alimenta. The district court's exclusion of Dr. Powers' testimony was a sanction imposed upon Alimenta for failure to conform to Fed.R.Civ.P. 26(e)(1)(B) which states that:

> A party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

The factors to be considered by the court in determining whether the evidence should be excluded are set out in *Murphy v. Magnolia Electric Power Association*, 639 F.2d 232 (5th Cir.1981), which quotes 8 C. Wright & Miller, Federal Practice and Procedure, § 2050 at 327 (1970) as " ... the explanation, if any, for the failure to name the witness, the importance of the testimony of the witness, the need for time to prepare to meet the testimony, and the possibility of a continuance." In the present case, Anheuser made a written request that Alimenta supplement its answers to expert witness interrogatories by summarizing Dr. Powers' testimony, which Alimenta refused. Dr. Powers never actu-

ally tasted the peanuts, and his testimony would have been a criticism of the methods employed by Anheuser's experts to determine the quality of the peanuts. Further, Anheuser was finally allowed to depose Dr. Powers the day before the trial began, leaving Anheuser with little time to prepare to meet his testimony. Based on these considerations, the trial judge did not abuse his discretion in excluding Dr. Powers' testimony.

■ The next issue to be determined is whether the Parole Evidence Rule, O.C. G.A. § 11–2–202, provides a basis to disturb the jury's finding that Alimenta made and breached an express warranty by sample. According to O.C.G.A. § 11–2–313, an express warranty may be created by sample:

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Alimenta argues that this warranty conflicts with the express warranty set out in the contract between the parties, and is therefore noneffective.

O.C.G.A. § 11–2–202 states that:

> Terms ... set forth in a writing intended by parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented;
>
> (b) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

It appears clear from the record that the samples Alimenta sent to Anheuser were intended to describe the product that Anheuser would receive in the bulk shipment. As correctly stated by the district court in its final judgment, " ... no express warranties were created by the samples except that the peanuts supplied under the con-

tract would conform to the size, appearance, and flavor of the sample peanuts." The representations as to appearance and taste that Alimenta made by providing two sets of samples to Anheuser were consistent additional terms.

Because there is no indication that the written contract was a complete and exclusive statement of the agreement between the parties, and because the terms expressed by the sample do not contradict those in the written contract, the Parole Evidence Rule does not prevent admission of evidence of the samples.

The final issue on appeal is whether the district court correctly ruled that Anheuser properly revoked acceptance of the blanched peanuts, and properly rejected those nuts which were neither blanched nor processed.

■ As to the blanched nuts, a buyer may revoke after acceptance if he accepted without discovery that the goods were nonconforming, and if his acceptance was induced by difficulty of discovery of the nonconformity. See O.C.G.A. § 11–2–608. According to O.C.G.A. § 11–2–608(2), the revocation of acceptance must occur before any substantial change in the condition of the goods. The act of blanching the peanuts is perfected by raising the temperature to a certain degree, thus causing the outer red hulls to fall off. The district court correctly ruled that the act of blanching the peanuts constituted an acceptance of the goods pursuant to O.C.G.A. § 11–2–606(1)(c), as an "act inconsistent with the seller's ownership" and that the blanching process did not substantially change the peanuts.

■ As to the peanuts which were neither blanched nor processed, the district court correctly ruled that they were properly rejected. As determined by the district court, Alimenta breached the implied warranty of merchantability by delivering goods that were not fit for the ordinary purposes and did not run of even kind, quality, and quantity within each unit and among all units involved. In accordance with O.C.G.A. § 11–2–602(1), the rejection

came within a reasonable time, and Alimenta was seasonably notified of the rejection.

For the aforestated reasons, the decision of the district court is hereby affirmed.

AFFIRMED.