**THE SHUTTER SHOP, INC., Plaintiff,**

v.

**AMERSHAM CORP., Defendant.**

**No. CIV. A. 99–D–1279–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 11, 2000.

Russell T. Duraski, James M. Sizemore, Jr., Montgomery, AL, for plaintiff.

Richard E. Broughton, Ball, Ball, Matthews & Novak, P.A., Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Amersham Corporation's ("THH" or "Defendant") Motion For Summary Judgment ("Def.Mot.Summ. J."), together with a sup-

porting Brief, which were both filed July 14, 2000. Plaintiff The Shutter Shop ("Plaintiff") filed its Response ("Pl.'s Resp.") on August 4, 2000. Defendant then filed a Reply ("Reply") on August 11, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be granted in part and denied in part.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). Neither party contests personal jurisdiction or venue.

## II. FACTUAL BACKGROUND

At the heart of this case is a dispute over whether the products bought were the products sold. In 1988, Richard Feaga ("Feaga") and his wife, Susan, founded The Shutter Shop, Inc., a small business in Montgomery that sells and installs plantation shutters on homes and businesses throughout central Alabama. (Feaga's Dep. at 18–19.) The shutter frames are held in place with magnets that are purchased separately and attached to the inside of the shutters. Feaga or his employees attach the magnets themselves by running screws through a hole they drill in the foot of the plastic casing surrounding the magnet. (Id. at 77–78; Frazier's Dep. at 46.)

Ever since opening The Shutter Shop, Feaga purchased magnets and other shutter equipment from Amersham Corporation, which does business under the name of Terry Hinge and Hardware Company. (Feaga's Dep. at 33.) Feaga selected the magnets from THH's catalog and placed his orders several times a year via telephone, speaking to a THH employee named Dave each time. (Id. at 56.) Feaga always purchased the magnet identified by THH's catalog as "M03–03944." The catalog described the magnet's size, shape, and pulling power. It also displayed a

picture of the magnet, the top of which bore a stamped imprint reading "Supec 12." (Id. at 44–48; Def. Ex. 9).

When Feaga ordered magnets, he always referred to the magnet's product number, because "[THH] always want[s] a product number; that's all they care about." (Feaga's Dep. at 44–46, 56.) Thus, he never explicitly stated that he wanted a "Supec 12" magnet. Similarly, he never informed Dave that he needed magnets with plastic casing of a certain durability or flexibility. He also never described The Shutter Shop's process of drilling holes in the bottom of the magnets prior to installation. However, on several occasions, he told Dave that he needed a magnet with a certain size, shape, and pulling power. (Id. at 52–56, 140.)

Each shipment of M03–03944 magnets—in terms of size, shape, pulling power, and plastic casing—was consistent with the previous shipment. (Id. at 52; Feaga Aff.) The magnet's performance satisfied Feaga at all times between 1988 and May 1997. He was especially pleased with how the magnet held in place the shutters he attached to homes and businesses. (Feaga Aff.)

In May 1997, without informing its customers, THH obtained a new supplier for the magnets identified as product M03–03944. (Def. Mot. Summ. J. at 2.) Despite changing suppliers, THH did not change its description of the magnets in either its catalog, invoice slips, or product numbers. It continued to use the same product number and invoice number to identify the magnets, and its catalog still depicted product M03–03944 as a magnet bearing the imprint "Supec 12." (Feaga's Dep. at 44; Def. Ex. 7, 9.)

Feaga telephoned THH in May or June 1997 and—without knowledge of the change in suppliers—ordered another batch of M03–03944 magnets. After receiving the magnets, which were now supplied by Velvet Industries, Feaga noticed that they no longer had the words "Supec 12" stamped on them.[1] (Feaga's Dep. at

---

1. It is now known that the magnets originally were supplied by Magnet Applications/Cook-

53–56; Def. Mot. Summ. J. at 2.) The new magnets also responded differently to Feaga's efforts to drive screws into them. Sometimes the plastic casing would become indented or depressed, and other times the screw would go completely through the casing unless Feaga changed the clutch setting on his equipment. Feaga pointed out these differences to his employees, but he continued using the magnets as part of his normal business operations and did not attempt to return them. (Feaga's Dep. at 56–57; Frazier's Dep. at 45–47.)

At some point after receiving this shipment, Feaga called THH to order additional magnets. During this phone conversation, Feaga spoke with Dave and asked whether the M03–03944 magnets he had been purchasing were the same as those THH had previously supplied. (Feaga's Dep. at 44–45, 56.) Feaga also asked Dave, "in passing," whether there were "any differences" between the magnets he received in May or June 1997 and those he received prior to that date. (*Id.* at 53–57.) In response, Dave stated that the Supec 12 magnets were no longer being manufactured and were unavailable, that the Velvet magnets were manufactured in Italy, and that they were "just as good or supposed to be just as good" as the Supec 12s. (*Id.* at 54–55.) [2]

The precise time when Feaga contacted THH and asked about differences between the Supec 12 magnet and the Velvet magnets is unknown. It is also unclear how many times, if any, Feaga ordered magnets between May 1997 and when he received this information. (*Id.* at 53–56.)

In any event, it is clear that Feaga continued to purchase magnets periodically from THH, after being appraised that THH had changed suppliers. He eventually purchased a total of 11,700 Velvet magnets from THH between June 1997 and May 1999. (Def.Ex. 8.) Possibly as early as January 1999, approximately 18 months after The Shutter Shop had received the first shipment of Velvet magnets, some of Feaga's customers began to report that the plastic casing around the foot of the Velvet magnets was breaking. (Reply at 1; Feaga's Dep. at 77–78.) [3] As a result, the magnets could not support properly the shutters to which they were attached, and the shutters began falling off the homes and businesses of Feaga's customers.

In June 1999, when Feaga informed THH about problems he was having with the Velvet magnets, THH offered to replace the 500 Velvet magnets he had on hand. (Feaga's Dep. at 108.) THH also told him that the Supec 12 magnets were, in fact, available for purchase. (*Id.* at 114.)

The reverse side of THH's invoices contains a warranty, a disclaimer of all other warranties, and a limitation of damages provision. The limitation, which is printed in bold font, provides that THH will only replace defective products or refund the seller's purchase price if the seller is unsatisfied. (Def.Ex. 6, 7). The invoice accompanied all shipments of products to The Shutter Shop. Feaga had an opportunity to read the invoices, warranties, and disclaimers. He never objected to them. (Feaga's Dep. at 92–100.)

On behalf of The Shutter Shop, Feaga subsequently filed this action in Alabama state court. The Shutter Shop brings tort law claims of fraudulent suppression and misrepresentation, as well as contract law claims for breach of express warranty and implied warranty of merchantability. THH removed on the basis of diversity. *See* 28 U.S.C. § 1332.

son of Philadelphia. (Def.Ex. 8.) There is no evidence that Feaga knew of the original supplier's location prior to litigation.

2. During a later conversation, another employee told Feaga they were manufactured in Germany. (Feaga's Dep. at 191.)

3. No customer has ever complained of similar problems with the Supec 12 magnets. (Feaga's Dep. at 114.)

## III. SUMMARY JUDGMENT STANDARD

When considering a motion for summary judgment, the court construes the evidence and makes factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment is entered only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

At this juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). The determination involves applying substantive law to the substantive facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation with the evidence developed. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. The movant must inform the court of the basis for the motion and establish, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact. *Id.* at 322–23, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(c)). The moving party may satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the non-moving party failed to produce sufficient evidence to establish an essential element of the case on which that party will ultimately bear the burden of proof. *See id.*

After such a showing, the burden of production shifts to the nonmoving party, which must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. In order to meet its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P. 56(e). An action will be dismissed when the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

Defendant moves for summary judgment on each claim in Plaintiff's Amended Complaint. The court will first consider Plaintiff's tort claims. Then, the court will address Plaintiff's contract law claims.

### A. *Fraudulent Suppression*

Count Two of Plaintiff's Amended Complaint raises the claim of fraudulent suppression. The Shutter Shop contends that THH was obligated to disclose that it was "no longer supplying the original magnet and was, in fact, supplying magnets of lesser quality." (Am.Compl.¶ 17.) THH challenges the sufficiency of The Shutter Shop's evidence with respect to each element of this cause of action.

For the reasons stated below, the court finds that THH disclosed all material facts. Moreover, the court finds that The Shutter Shop had knowledge of those facts prior to purchasing magnets of supposedly lesser quality. Thus, summary judgment is due to be granted on Count Two.

"Suppression of a material fact which the party is under an obligation to communicate constitutes fraud." ALA. CODE § 6–5–102 (1975). A material fact is one that is of "such nature as to induce action on the part of the complaining party." *Graham v. First Union Nat'l Bank of Georgia*, 18 F.Supp.2d 1310, 1317 (M.D.Ala.1998) (citations omitted). Furthermore, the misrepresentation need not be the sole inducement. "[I]t is sufficient if it materially contributes and is of such a character that the [complaining] party would not have consummated the contract had he known the falsity of the statement." *Id.*

To establish a prima facie cause of action, Plaintiff must show: (1) that the defendant had a duty to disclose material facts; (2) that the defendant concealed or failed to disclose those facts; (3) that the concealment or failure to disclose induced the plaintiff to act; and (4) that the defendant's action was the proximate cause of actual harm suffered by the plaintiff. *See Jewell v. Seaboard Indus., Inc.*, 667 So.2d 653, 658 (Ala.1995); *see also State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834 (Ala.1998) (existence of duty to disclose is question of law).

A party's mere silence as to a material fact does not constitute fraud unless that party is under a duty to disclose. Such a duty may be imposed due to a confidential relationship between the parties or from the particular circumstances of the case. *See Hines v. Riverside Chevrolet–Olds, Inc.*, 655 So.2d 909, 918 (Ala. 1994).

In the absence of a fiduciary relationship, courts have discretion to consider the value of the non-disclosed information, the relative knowledge and bargaining power of the parties, and other factors that may be appropriate. *See id.* In commercial transactions involving parties to arm's length negotiations, however, a bright line rule generally applies: The parties have no general obligation to disclose, *see Simpson v. Sto Corp.*, 951 F.Supp. 202, 205–06 (M.D.Ala.1996), but each has an affirmative duty to respond "truthfully and accurately" to direct questions from the other. *See Ex parte Ford Motor Credit Co.*, 717 So.2d 781, 787 (Ala.1997) ("the law still requires, even in the present adversarial world of commercial transactions, that direct questions be responded to truthfully and accurately. . . .")

Thus, Alabama law presumes that the parties are capable of handling their own affairs and guarding their interests by asking reasonably specific, direct questions that will satisfy their need for information. The parties decide what information they need, and the law protects their rights to receive it.

Applying the relevant law to this case, the court finds that summary judgment is due to be granted as to Plaintiff's fraudulent suppression. The Shutter Shop argues that THH was obligated to disclose that it had switched from supplying Supec 12 magnets to Velvet magnets that The Shutter Shop feels were of lesser quality. Because the parties were not fiduciaries, this duty could only have arisen in response to The Shutter Shop's request for information about the magnets THH was selling. *See Simpson*, 951 F.Supp. at 205–06; *Ex parte Ford Motor Credit*, 717 So.2d at 787.

The court finds that THH satisfied its duty. At some point after May 1997 (when THH substituted magnets without informing The Shutter Shop), Feaga called THH's office and asked whether the magnets were the same as those THH had previously supplied. Feaga also inquired, "in passing," whether there were "any differences" between the magnets he received in May 1997 and those he received prior to that time. In response, Dave, one of THH's employees, stated that "they weren't getting [the magnets] from the same place, that they— the other supplier quit— they couldn't get them from their other supplier ... they couldn't get [the original magnets] any more and they had to find a new supplier and they were com-

ing out of Italy." (Feaga's Dep. at 54–55.)[4]

Thus, in response to Feaga's query, the evidence establishes that THH disclosed that it was supplying different magnets from a different supplier. THH had already disclosed the size and shape of those magnets in its catalog. In addition, at the time Feaga spoke with Dave, Feaga already had actual knowledge that the Velvet magnet's plastic casing was more flexible than the Supec 12's. Although the magnets were identified by picture and description as M03–03944 "Supec 12" magnets, Feaga noticed that the plastic casing around the magnets felt softer than usual and responded differently to Feaga's attempts to drive screws through them. Therefore, the differences in the durability and resilience of the plastic casing were not fraudulently concealed. Information that is already known cannot be suppressed. *See Patterson v. United Cos. Lending Corp.*, 4 F.Supp.2d 1349, 1354 (M.D.Ala.1998); *Oswald v. Metropolitan Life Ins. Co.*, 968 F.Supp. 639, 646 (M.D.Ala.1997).

██ THH had no reason to know that Feaga may have been inquiring—if an inquiry it may be called—as to whether the magnets would perform any differently when used for his particular installation purposes. At no time did Feaga ever inform THH of those purposes, and no evidence suggests that THH knew of them. A disclosing party cannot be punished for fraudulent suppression unless the questioning party articulates with reasonable clarity the particular information it desires. *See Ex parte Ford Motor Credit*, 717 So.2d at 786–88 (illustrating a question of "general nature ... not specific enough" to impose a wideranging disclosure obligation); *see also Jones v. Ballon, Stoll & Itzler*, 1990 WL 113120 at *9 (S.D.N.Y. 1990), *aff'd*, 930 F.2d 908 (2d Cir.1991) (no duty to disclose except in response to inquiries "sufficient" to alert party questioned); *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 513 P.2d 353, 360 (1973) (no duty to disclose when questioning party does not convey significance of question asked).

██ Moreover, a request for information about a product's future performance generally is considered a solicitation of opinion rather than fact. In the context of this case, Defendant cannot be held liable for fraudulent suppression of material facts when all that was solicited was an opinion. "Statements that are simply opinions of the product's future performance ... cannot provide the basis for a fraud claim." *Wade v. Chase Manhattan Mortgage Corp.*, 994 F.Supp. 1369, 1382 (N.D.Ala.1997). *See also Fincher v. Robinson Bros. Lincoln–Mercury, Inc.*, 583 So.2d 256, 259–60 (Ala.1991).

Finally, The Shutter Shop produced absolutely no evidence—although it must—to suggest that THH actually knew of any latent differences in the Velvet magnet's plastic casing. *See Cato v. Lowder Realty Co.*, 630 So.2d 378, 382 (Ala.1993); *McGarry v. Flournoy*, 624 So.2d 1359, 1362 (Ala. 1993). For all these reasons, the court finds that summary judgment is due to be entered in favor of Defendant on Count Two of Plaintiff's Amended Complaint.

## B. *Fraudulent Misrepresentation*

Count Three alleges that THH fraudulently misrepresented several material facts. Plaintiff points to three statements in particular: (1) that the Supec 12 magnet is no longer available and that its supplier had quit producing them; (2) that the Velvet magnets were manufactured in Italy or Germany; and (3) that the Velvet magnets are "just as good or supposed to be just as good" as the Supec 12 magnets. (Am. Compl. ¶ 22; Feaga's Dep. 54, 190; Pl.'s Resp. at 4.) Defendant moves for summary judgment, arguing that the statements were expressions of opinion rather than

---

4. Several of Defendant's employees also stated that Velvet magnets were "as good or just as good" as Supec 12 magnets. (Feaga's Dep. at 190.) These statements will be analyzed in conjunction with Plaintiff's allegation of fraudulent misrepresentation.

fact and that, in any event, Plaintiff could not have reasonably relied upon them.

The court agrees with Defendant as to two of the three statements. As explained below, the jury must determine whether Defendant's statement about the availability of the Supec 12 amounts to fraudulent misrepresentation. None of the other statements, however, can form the basis for such a cause of action. Thus, Defendant's Motion For Summary Judgment as to Count Three is due to be granted in part and denied in part.

 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." ALA. CODE § 6-5-101 (1975). Put another way, the statement must have contributed to the plaintiff's decision to enter into the contract. *See Graham,* 18 F.Supp.2d at 1317. A prima facie case of misrepresentation requires a showing of: (1) a false representation of material fact; (2) which is relied upon by the plaintiff; (3) to the plaintiff's detriment. *See Boswell v. Liberty Nat'l Life Ins. Co.,* 643 So.2d 580, 581 (Ala.1994).

 Reliance must be reasonable, *see Wheelan v. Sessions,* 50 F.Supp.2d 1168, 1174 (M.D.Ala.1999); *Foremost Ins. Co. v. Parham,* 693 So.2d 409, 422 (Ala. 1997),[5] and "if the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover." *Torres v. State Farm Fire & Cas. Co.,* 438 So.2d 757, 758–59 (Ala.1983). The reasonableness of a plaintiff's reliance is a question of fact typically left for the jury. *See Federal Savs. & Loan Ins. Corp. v. Haralson,* 813 F.2d 370, 375 (11th Cir.1987) (applying Alabama law); *Mid–*

*State Homes, Inc. v. Holt,* 52 Ala.App. 415, 293 So.2d 476, 481–82 (Ala.Civ.App.1974).

 The court's primary challenge is determining whether the defendant's statement is a misrepresentation of fact or simply an expression of opinion. One cannot commit fraud by expressing opinions that amount "to nothing more than 'puffery.'" *Fincher,* 583 So.2d at 259. Analysis turns "upon all the circumstances of the particular case, such as the form and subject matter of the representation and the knowledge, intelligence and relation of the respective parties." *Harrell v. Dodson,* 398 So.2d 272, 274–75 (Ala.1981) (citations omitted). In cases of doubt the question should be left to the jury. *See id.; Thompson v. United Cos. Lending Corp.,* 699 So.2d 169, 173 (Ala.Civ.App.1997). With these principles in mind, the court turns to each of Defendant's alleged fraudulent misrepresentations.

*1. Unavailability of Supec 12 magnets*

 The first are Defendant's alleged statements that the Supec 12 magnets were no longer in production or were no longer available. (Feaga's Dep. at 41, 54, 190.) Viewed in a light most favorable to the plaintiff, the court finds that a rational jury could consider such statements to be fraudulent misrepresentations.

First, a jury could find that the availability of Supec 12 magnets was a material fact. Feaga, who purchased magnets for Plaintiff's corporation, had ordered Supec 12 magnets for more than nine years. It is undisputed that he contacted Defendant some time after he learned that the plastic casings around the Velvet magnets were cracking. He also subsequently informed Defendant that he wanted to exchange the Velvet magnets and obtain "the original Supec 12 for every one that I had ordered and paid for." (*Id.* at 107.) From these facts, a jury could conclude that Feaga

---

**5.** Alabama courts originally applied a "reasonable reliance" standard in all misrepresentation cases. The Supreme Court of Alabama later switched to a less flexible "justifiable reliance" standard, which was used for less than ten years. Then, in *Foremost,* 693 So.2d at 421, the Court re-adopted the reasonable reliance standard and directed that it be applied in all cases filed after March 14, 1997.

would not have purchased magnets from THH if he believed Supec 12 magnets were obtainable elsewhere. Instead, he might have changed suppliers. *See Graham*, 18 F.Supp.2d at 1317.

Second, a jury could find that Feaga reasonably relied upon Defendant's misrepresentation. THH, as the middleman supplier of shutter magnets, could be found to have had greater access to information about the availability of magnets than The Shutter Shop, its customer. There is no evidence that THH's catalog or invoice slips provided customers with any information about the identity or location of the Supec 12's manufacturer. The magnets were similarly mute. In addition, Feaga believed The Shutter Shop was one of only a handful of companies in the country that was purchasing Supec 12 magnets. (Feaga's Dep. at 40.) Thus, a jury could find that he reasonably concluded the company stopped producing them due to inadequate demand. Moreover, the jury could find that Feaga reasonably and prudently believed that THH would speak with honesty and candor toward such a longtime customer. Merchants are held to the highest of ethical standards. *See* ALA. CODE § 7–1–201(19) (1975) (defining "good faith"); Richard E. Speidel, *The Characteristics and Challenges of Relational Contracts*, 94 NW. U.L. REV. 823 (2000) (conceptualizing normative and ethical aspects of modern commercial transactions).

Defendant argues that Feaga's reliance was unreasonable for various reasons. It points out that Feaga is a college-educated businessperson. It also argues that Feaga and his employees, "with their years of experience in the business were capable of making a phone call or two to determine the availability of Supec 12 magnets. Instead, Feaga clearly testified that he did not try to shop around . . . ." (Br. Supp. Summ. J. at 14.) Defendant, of course, will be able to make these arguments as well as others at trial. A jury may agree. It may not. *See Bedwell Lumber Co. v. T & T Corp.*, 386 So.2d 413 (Ala.1980) (plaintiff need not undertake an independent

investigation of facts represented). In the end, though, a jury is entitled to make this decision. *See Haralson*, 813 F.2d at 375. Summary judgment is due to be denied as to any statements about the unavailability of Supec 12 magnets.

### 2. Site of manufacture of Velvet magnets

■ Defendant's second allegedly fraudulent representation was that the Velvet magnets were produced either in Italy or Germany. (Feaga's Dep. at 54, 190–91.) The court finds that these statements were not material. Feaga clearly stated in his deposition that he was not concerned with where the magnets were manufactured. (*Id.* at 190–91.) Thus, the point of manufacture did not influence Feaga's decision to contract with THH. *See Graham*, 18 F.Supp.2d at 1317. Summary judgment is due to be granted as to any statements on this topic.

### 3. Comparison between Velvet magnets and Supec 12 magnets

■ The final alleged misrepresentation is Defendant's assertion that Velvet magnets were of equal quality ("just as good or supposed to be just as good") as Supec 12 magnets. (Feaga's Dep. at 190.) The issue is whether the statement was an expression of opinion or a definite expression of fact upon which Plaintiff could reasonably rely. The court finds that Defendant's statement, in the context of this case, is insufficient to support a claim of fraudulent misrepresentation. Therefore, summary judgment is due to be granted as to any statements about the quality of the Velvet magnets.

The court finds that a statement about a product's "supposed" performance cannot be rightly construed as a statement of fact. Something that is "supposed" is something that is advanced "especially on uncertain or tentative grounds." AMERICAN HERITAGE COLLEGE DICTIONARY (2d ed.1985). It may be considered "to be probable or likely," but should be viewed only "as a suggestion." *Id.* To accept a supposition is to accept an opinion. *See*

*Lewin v. Long,* 70 F.Supp.2d 534, 544 (D.N.J.1999) (opinions include statements of probability).

The court also finds that, in this context, a statement that Velvet magnets were "just as good" as Supec 12 magnets cannot be considered a factual statement. Respected commentators have observed that "a common application of the opinion rule is in the case of loose general statements made by sellers in commending their wares." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 109, at 756 (5th ed.1984). Indeed, in *Lucky Mfg. Co. v. Activation, Inc.,* 406 So.2d 900, 905 (Ala. 1981), the Supreme Court of Alabama analyzed a water pump retailer's statement that its product was "as good or better" than another pump previously used by the plaintiff. The court noted that the statement, made during contract negotiations between two parties in the same line of business, was " 'traders' talk or 'puffery' " and could not support a fraud claim. *See id.*

This case presents a situation similar to that in *Lucky.* Both parties here were merchants in the same industry. Feaga's questions about characteristics of the Velvet and Supec 12 magnets were vague and generalized. Unlike THH's statements about the availability of Supec 12 magnets, its claims about the product's performance were general. THH offered no specific details to support its commendation of the Velvet magnets, and THH made no references to any empirically verifiable aspect about the product. There might be situations in which a merchant's comparison of its various products could sustain a fraud action. But this is not one of them. Accordingly, the court finds that Feaga could not have reasonably believed that THH's statements were representations of material facts about the magnet's plastic casing. Any statements about the casing around

the Velvet magnets were mere opinions, and summary judgment is due to be granted.

### C. *Implied Warranty of Merchantability*

The court now turns to Plaintiff's commercial law claims. The court first resolves Count One of Plaintiff's Amended Complaint, which alleges that Defendant breached an implied warranty of merchantability.[6] (Am.Compl.¶¶ 11–15.) Defendant responds that it effectively disclaimed any warranty. The court agrees with Defendant, and finds that summary judgment is due to be granted as to Count One.

■ Under Alabama law, while the seller of goods implicitly warrants that the goods are merchantable and fit for ordinary use, this implied warranty may be excluded or modified by conspicuous writing. *See* ALA. CODE §§ 7–2–314, 2–316(2) (1975); *Dairyland Ins. Co. v. General Motors Co.,* 549 So.2d 44, 47–48 (Ala. 1989). A "conspicuous" writing may include writing printed in a contrasting type or color, as long as it reasonably alerts the party of its existence. *See Fincher,* 583 So.2d at 258–59.

■ In this case, each shipment of Velvet magnets included an invoice bearing a clearly legible font that stated in bold face: "This warranty is expressly in lieu of other warranties, express or implied and whether statutory or otherwise, including any implied warranty of merchantability or fitness for a particular purpose." (Def.Ex. 6, 7.) Feaga acknowledged receiving the disclaimer and having had an opportunity to read it. He also stated that the terms and conditions are typical of those commonly used in transactions between merchants in the shutter industry. (Feaga's Dep. 90–98.) Accordingly, the court finds the disclaimer effective, and summary judgment is due to be granted as to Count One.[7] *See Fincher,* 583 So.2d at 258–59.

**6.** Plaintiff admits that it has not developed evidence to support Count One's allegation of breach of implied warranty of fitness for a

particular purpose. (Mot. Opp'n Summ. J. at 8.)

**7.** Of course, the disclaimer is not effective as

## D. *Express Warranty*

■ Finally, the court considers Count Four of Plaintiff's Complaint, which alleges that Defendant breached an express warranty by supplying Velvet magnets with plastic casings that were of different quality than those surrounding the Supec 12 magnets. (Am.Compl.¶¶ 25–28.) Plaintiff argues that Defendant's catalog and their course of dealing created an express warranty that any magnet shipped under product M03–03944 would be of similar quality as the Supec 12. Defendant responds that no warranty was created because there was no express understanding that any given shipment would conform with previous ones. Defendant also responds that the nature of the magnet's plastic casing was not a basis of the bargain. The court disagrees with Defendant, and finds that summary judgment is due to be denied as to Count Four.

As an initial matter, the court notes that it is liberally construing Count Four to allege a claim for breach of express warranty by description rather than by sample. *See* FED. R. CIV. P. 8(f) ("[a]ll pleadings shall be so construed as to do substantial justice"); *see also Whaley v. Sony Magnetic Prods., Inc.*, 894 F.Supp. 1517, 1525 (M.D.Ala.1995).

In Count Four of its Amended Complaint, Plaintiff contends that it "relied on an express warranty by sample." The gravamen of Plaintiff's allegation, however, is that "[b]y providing . . . magnets of certain quality and character, Defendant made an express warranty . . . ." (Am. Compl.¶¶ 26–27.) Thus, from the face of the Amended Complaint, Plaintiff has blended two separate breaches of warranty together into one Count.[8] Because the court finds sufficient evidence to allow Plaintiff to proceed under a claim of breach of warranty by description, the

court will liberally construe the Amended Complaint to make such an allegation.

The law of express warranties is set forth in § 7–2–313 of the Alabama Code:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

**(b) Any description of the goods which is made part of the basis of the bargain creates an.express warranty that the goods shall conform to the description.**

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make such a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

ALA. CODE § 7–2–313 (1975) (emphasis supplied).

■ As the Code indicates, the seller does not need to intend to make a warranty, so long as its description of the goods are part of the basis of the bargain between the buyer and seller. Absent clear and affirmative proof to the contrary, any descriptions presented as affirmations of fact are presumptively a basis of the bargain. *See id.* cmt. 3, 6; *Massey–Fer-*

---

to any express warranty. *See infra.*

**8.** A "sample" is "actually drawn from the bulk of goods which is the subject matter of the sale." ALA. CODE § 7–2–313, cmt. 6 (1975). In other words, samples are portions of a material that a prospective buyer exam-

ines to determine whether to order quantities of that material. Past deliveries cannot constitute samples if they are each the product of a prior, independent sale. *See Unicomp, Inc., v. Elementis Pigments, Inc.*, 1999 WL 1995400, at *15 (D.Me.1999).

*guson, Inc. v. Laird,* 432 So.2d 1259, 1261–62 (Ala.1983) ("the very definition of an express warranty embraces the concept of 'part of the basis of the bargain.'") *Cf. Lucky,* 406 So.2d at 905 (statements of opinion do not create warranty).

The question, however, is one of fact, and a description of goods becomes a basis of the bargain—and then creates an obligation of conforming tender—only if the parties intended to contract with reference to the specific description at issue. *See* ALA. CODE § 7–2–316, cmt. 3 (1975); *see also Empire Gas Corp. v. American Bakeries Co.,* 840 F.2d 1333, 1335 (7th Cir. 1988).

 The seller's description of goods, of course, can be found in its printed materials, such as brochures and catalogues, provided they are read and relied upon. *See, e.g., LWT, Inc. v. Childers,* 19 F.3d 539, 541 (10th Cir.1994); *Hagenbuch v. Snap–On Tools Corp.,* 339 F.Supp. 676, 680 (D.N.H.1972). Yet the description "need not be by words.... Past deliveries may set the description of quality, either expressly or impliedly by course of dealing." ALA. CODE § 7–2–313, cmt. 5 (1975). *See also Unicomp,* 1999 WL 1995400 (D.Me.1999); *Duffin v. Idaho Crop Improvement Assoc.,* 126 Idaho 1002, 895 P.2d 1195 (1995). Express warranties cannot be disclaimed. *See Ricwill, Inc. v. S.L. Pappas & Co.,* 599 So.2d 1126, 1131 n. 2 (Ala.1992).

The court finds sufficient evidence that THH expressly warranted that its magnets would have plastic casing of a particular durability. The plain language of the Code states that past deliveries may set the description of the goods warranted. *See* ALA. CODE § 7–2–313, cmt. 5 (1975). Plaintiff has presented evidence that for approximately nine years, magnets ordered under product number M03–03944 consistently had plastic casing of a certain quality. Plaintiff also has submitted an affidavit stating that the plastic casing's quality was a primary reason it purchased the magnets from THH. (Feaga Aff.) Thus, a jury could find that the parties'

sustained course of dealing established the nature of plastic casing to be expected in future shipments with the same number, and also that the plastic casing was a basis of the bargain.

 If, indeed, the prior course of dealing created an express warranty, then the purported disclaimers in Defendant's invoice slips are invalid. *See Ricwil,* 599 So.2d at 1131 n. 2. Moreover, while Defendant's invoice contains a standard parol evidence clause, the jury may nonetheless hear evidence about the quality of prior magnets shipped under product number M03–03944. Descriptions of the plastic casing, as created through the parties' course of prior dealings, are consistent additional terms that may be used to determine the subject of the contract. Therefore, they are admissible. *See* ALA. CODE § 7–2–202 (1975). *Cf. Alimenta (U.S.A.), Inc. v. Anheuser–Busch Companies, Inc.,* 803 F.2d 1160, 1163–64 (11th Cir.1986).

Defendant has presented evidence suggesting that Plaintiff purchased magnets solely with their size, shape, and pulling power in mind. The jury might believe this evidence. Or the jury might reasonably conclude that Plaintiff, who used the magnets to attach shutters on homes and buildings, also was naturally concerned with obtaining magnets that he believed would hold up post-installation. At this point in the litigation, Defendant simply has not made the showing necessary to remove the question of express warranty from the hands of the jury. Therefore, Defendant's Motion For Summary Judgment as to Count Four is due to be dismissed.

### E. *Limitation of Remedies*

 The only remaining issue is whether Defendant can limit the remedies available to Plaintiff. Defendant argues that the contract between the parties expressly limited Plaintiff either to a replacement of defective goods or to a refund of the purchase price. Plaintiff argues that

the remedy limitation cannot be enforced, because the limitation fails of its essential compensatory purpose. For reasons stated below, the court disagrees with Plaintiff, and finds that the remedy limitation is an enforceable part of the contract between the two parties.

■ Alabama law permits a seller of goods to limit the buyer's means of redress for breach of warranty. However, in some situations, the limitation may "fail of its essential purpose," and the buyer may pursue damages to the full extent of the law. ALA. CODE § 7-2-719(b) (1975). The policy behind the failure of essential purpose rule is to insure that the buyer has "at least minimum adequate remedies ... available." *Id.* cmt. 1.

■ Generally, a warranty fails when the seller limits the buyer's remedies to repair or replacement of the product and the seller refuses to perform within a reasonable time. *See Ex parte Miller,* 693 So.2d 1372, 1377 (Ala.1997); *Ag–Chem Equip. Co. v. Limestone Farmers Coop., Inc.,* 567 So.2d 250, 252 (Ala.1990). The court determines, as a matter of law, whether a damages limitation has failed of its essential purpose. If not, it becomes part of the contract. *See Kennedy Elec. Co. v. Moore–Handley, Inc.,* 437 So.2d 76, 81 (Ala.1983) ("[t]he construction of a written document is a function of the court.")

In this case, the invoice order accompanying Defendant's shipment of magnets contained a list of terms and conditions. Relevant language provided that "Seller's liability for breach of warranty shall arise only upon return of the defective goods at Seller's expense after notice to the Seller of the claimed breach, and shall be limited to furnishing a like quantity of [the same goods] free from such defects or, at Seller's option, to refunding the purchase price." The terms also stated that "Seller shall never be liable for any consequential or incidental damages." Defendant's sale was conditioned on Plaintiff's assent to these terms, either through writing or acceptance of the goods. (Def.Ex. 1, 2, 6, 7.)

Plaintiff accepted Defendant's shipments without objection. Feaga had the opportunity to read the terms and conditions, and similar if not identical terms and conditions had routinely accompanied each of Defendant's shipments.[9] Moreover, Feaga stated that the terms and conditions are typical of those in the shutter industry. (Feaga Dep. at 90–100.) Accordingly, the court finds that the terms and conditions have become part of the sales contract between The Shutter Shop and THH. *See Kennedy,* 437 So.2d at 81; *Burbic Contracting Co. v. Cement Asbestos Prods. Co.,* 409 So.2d 1, 4 (Ala.1982).

Plaintiff cites two cases from other jurisdictions for the proposition that THH's limitation of remedies failed of its essential purpose. Those cases, however, are not binding and not pursuasive. They dealt with situations in which the seller had refused to perform, the burdens of replacement would be unfairly taxed to the buyer, or the goods were unique. *See Select Pork, Inc. v. Babcock Swine, Inc.,* 640 F.2d 147 (8th Cir.1981); *Leprino v. Intermountain Brick Co.,* 759 P.2d 835 (Colo.Ct.App.1988). In this case, the limitation is not unconscionable, and the defendant has not manifested an unwillingness to perform. Plaintiff has at least minimal means of redress, and so the limitation does not violate public policy. *See Burbic,* 409 So.2d at 5.

Therefore, the court finds that the remedy limitation does not fail of its essential purpose, and it shall be enforced. The court notes, however, that the limitation will apply only to a successful action for breach of warranty brought pursuant to Count Four of Plaintiff's Amended Complaint. Damages limitations do not apply to claims of fraudulent misrepresentation, under which actual and punitive damages may be awarded. *See, e.g., American*

9. The evidence suggests that identical terms and conditions accompanied each of THH's shipments. (Feaga's Dep. at 90–100.) The parties are free to offer additional proof as to whether this is the case.

*Honda Motor Co. v. Boyd,* 475 So.2d 835 (Ala.1985).

## V. CONCLUSION

In conclusion, summary judgment is due to be entered in favor of Defendant on Counts One and Two. Plaintiff may proceed under Count Three of its Amended Complaint to the extent that it addresses alleged misrepresentations about the availability of Supec 12 magnets. Plaintiff may proceed under Count Four of its Amended Complaint in its entirety. If this case proceeds to trial, and a jury finds in favor of Plaintiff on Count Four, damages will be limited according to the terms of the contract between Plaintiff and Defendant. The contract works no limitation as to damages awardable pursuant to Count Three.

## VI. ORDER

Accordingly, it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED in part and DENIED in part as follows:

(1) The Motion be and the same is hereby GRANTED with respect to Counts One and Two of Plaintiff's Amended Complaint.

(2) The Motion be and the same is hereby is GRANTED with respect to Count Three of Plaintiff's Amended Complaint, to the extent that same relates to any statements about the quality of Velvet magnets, their comparison to Supec 12 magnets, or where Velvet magnets are manufactured.

(3) The Motion be and is hereby DENIED with respect to Count Three of Plaintiff's Amended Complaint, to the extent that same relates to any statements about the unavailability or cessation of manufacture of Supec 12 magnets.

(4) The Motion be and the same is hereby DENIED with respect to Count Four of Plaintiff's Amended Complaint.

Furthermore, it is also CONSIDERED and ORDERED that Plaintiff's recovery upon proof of any allegations pursuant to Count Four of Plaintiff's Amended Complaint be limited in accordance with the terms and conditions set forth in Defendant's Exhibits 1, 2, 6, and 7.